Frederick L. LEIGHTON

v.

FLEET BANK OF MAINE, et al.

Supreme Judicial Court of Maine.

Argued Sept. 24, 1993.

Decided Nov. 15, 1993.

Ralph A. Dyer (orally), Portland, ME, for plaintiff.

Thomas A. Cox (orally), Jennifer S. Begel, Friedman & Babcock, Rufus E. Brown (oral-

ly), Drummond, Woodsum, Plimpton & MacMahon, Portland, ME, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Frederick L. Leighton appeals from the M.R.Civ.P. 12(b)(6) dismissals and summary judgments entered in the Superior Court (Cumberland County) in favor of Fleet Bank and Deering Associates Trust on Leighton's six-count complaint. Leighton claims that Fleet's assignment of a mortgage to Deering led to the improper disposition of collateral in which he held an interest as a junior lien-holder and guarantor. Because Leighton fails to demonstrate that Fleet ever obtained actual or constructive possession of the collateral, a finding necessary to support these claims, we affirm the Superior Court's entry of a judgment for both Fleet and Deering.

This case involves the development of a lot of land for use as a restaurant complex. In early 1989 Standby Corp. III purchased property located on Route 302 in North Windham from J & L Associates, a partnership comprised of Leighton and M. Thomas Juenemann. To develop a restaurant on the site, Standby had to lease adjacent property owned by Deering Associates Trust where it could install a septic system and construct a parking lot. Standby constructed a "Sizzler" franchise restaurant on the site, a portion of which it had leased to Dinex Two, a company engaged in the development and management of restaurant properties. The construction of the restaurant building was financed through a $700,000 loan from Fleet to Standby, secured by a mortgage. Dinex Two borrowed an additional $350,000 from Fleet in order to purchase the necessary restaurant equipment. Fleet took a security interest in the equipment, and obtained unconditional personal guarantees from both Leighton and Juenemann, as well as a pledge of securities from Leighton. As part of his agreement to guarantee the Fleet loan, Leighton obtained a junior security interest in the restaurant equipment. The guarantee signed by Leighton included a clause whereby Leighton agreed not to enforce any reme-

dy or right of subrogation until Fleet's loan was paid.

Dinex Two encountered financial difficulties and was unable to repay its debt. In April 1990 Fleet demanded payment of its loan, which totalled almost $370,000. Fleet satisfied $107,000 of the debt by liquidating some of the securities Leighton had pledged. By late summer Fleet had obtained judgments against Dinex Two, Juenemann, and Leighton and effected trustee process over certain of Leighton's investment and retirement accounts. Through a forcible entry and detainer action, Fleet began efforts to liquidate the restaurant equipment in which it held a security interest. Fleet decided to take a different approach, however, and subsequently abandoned the forcible entry action and commenced negotiations with Deering for Deering to purchase Fleet's mortgage interest and take assignments of both Standby's and Dinex Two's loans. The plan contemplated that the Sizzler restaurant would continue to operate, with the restaurant equipment in place, to give Dinex Two a source of revenue to meet its loan obligations. The transfer was completed by midsummer 1991.

Prior to Fleet's transfer of the mortgage to Deering, Leighton attempted to foreclose on his junior lien. Fleet responded by warning Leighton that he had agreed not to proceed against the restaurant equipment. Leighton filed a six-count complaint against Fleet and Deering seeking: (1) a declaratory judgment against Fleet that it had strictly foreclosed on the collateral; (2) relief from Fleet for conversion of assets; (3) relief from Deering for aiding and abetting a conversion; (4) relief from Fleet for breach of fiduciary duty; (5) relief from both Fleet and Deering for fraudulent conveyance; and (6) relief from Fleet for unjust enrichment.

The court (*Lipez, J.*) granted Fleet's M.R.Civ.P. 12(b)(6) motion to dismiss the counts involving breach of fiduciary duty, fraudulent conveyance, and unjust enrichment. The court also granted Deering's 12(b)(6) motion as to the fraudulent conveyance claim. Subsequently, the court entered a summary judgment for Fleet on the strict

foreclosure and conversion claims. In a separate proceeding, the court (*Fritzsche, J.*) granted Deering's motion for a summary judgment on the aiding and abetting a conversion claim. Leighton appeals the entry of these judgments.

### Strict foreclosure

■ When a debtor defaults under a security agreement governed by Article 9 of the Uniform Commercial Code, the secured party has the right to satisfy the debt by seizing and disposing of the collateral. 11 M.R.S.A. § 9–503 (1964). Sections 9–504 and 9–505 specifically provide, however, that the disposition of the property must be in compliance with strict notification and commercial reasonableness standards. *Id.* §§ 9–504, 9–505 (1964 & Supp.1992). The failure to comply with the notification requirement precludes a secured party from collecting a deficiency judgment. *Camden Nat. Bank v. St. Clair,* 309 A.2d 329, 333 (Me.1973); *see also* 11 M.R.S.A. § 9–507 (1964).

■ In order for any of the rules regarding the disposition of collateral to come into effect, however, the creditor must actually take possession of the collateral. Leighton argues that Fleet took "constructive possession" of the restaurant equipment through three acts: (1) Fleet directed Leighton to leave the collateral in the possession of Dinex Two; (2) Fleet attempted to proceed against the collateral through the forcible entry and detainer action; and (3) Fleet reached an understanding with Deering that the equipment would remain in place in the restaurant.

■ When reviewing the entry of a summary judgment, we view the evidence in the light most favorable to the party against whom judgment was entered and determine if the trial court committed an error of law. *Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me.1992). On the undisputed facts in this record there is simply nothing to demonstrate that Fleet ever had possession—either actual or "constructive"—of the restaurant equipment. Despite its earlier efforts to recover and sell the equipment, at no time did Fleet take the equipment into its possession. Nor can it be said that Fleet exercised such dominion or control of the equipment as would constitute constructive possession. *See State v. Durgan,* 467 A.2d 165, 167 (Me. 1983) (dominion, authority, or control of goods constitutes constructive possession where there has not been physical possession). The equipment has at all times remained in the Sizzler restaurant under the direction of the restaurant operator and debtor, Dinex Two.

Moreover, Fleet's transfer of the mortgage to Deering did not prevent Leighton from foreclosing on the restaurant equipment. Fleet was within its rights as the senior lienholder on the property to prevent the junior creditor, Leighton, from liquidating the collateral. *See* 11 M.R.S.A. § 9–306(2) (Supp.1992) (a secured party who authorizes disposition of collateral loses the security interest). Furthermore, and perhaps most importantly, Leighton had signed an unconditional guarantee of the Fleet loan in which he waived his rights to proceed against the collateral until the obligation to Fleet was satisfied.[1] It cannot be said that Fleet's actions prevented Leighton from foreclosing on the collateral when Leighton had already agreed not to pursue "any remedy" until Fleet's debt was satisfied.

■ We decline to adopt an implied standard of "good faith and fair dealing," that Leighton argues should be read into the guarantee agreement to prevent Fleet from choosing to pursue the guarantee, thereby "abandoning" its right to proceed against the collateral, while at the same time preventing the guarantor from proceeding against the collateral. Although we recognize a duty of good faith on the part of banks, requiring "honesty in fact," we have specifically declined to adopt a more general common law duty of good faith under the U.C.C. *Diversified Foods, Inc. v. First Nat. Bank of Boston,* 605 A.2d 609, 613–14 (Me.1992). There is no evidence that Fleet acted dishonestly or

---

1. The agreement stated: "Until such indebtedness of Debtor or Creditor shall have been paid in full, the undersigned shall have no right of subrogation and waives any right to enforce any remedy."

in bad faith with respect to Leighton's rights in the collateral. In fact, it is not unusual for a creditor to pursue a guarantor rather than attempting to recover on the secured collateral. Leighton could have bargained with Fleet to modify the waiver provision of the guarantee to give him better rights against the collateral. In the absence of any language to support Leighton's contention, we decline to read into the guarantee agreement Leighton's expectation that Fleet would allow him to foreclose on the restaurant equipment.

Without a showing of some kind of possession of the collateral by Fleet, the default provisions pursuant to Article 9 requiring disposal of the collateral are not applicable. The Superior Court was not in error to rule as a matter of law that there had been no strict foreclosure under Article 9.[2]

### Conversion and aiding and abetting conversion claims

■ Leighton argues that Fleet and Deering have "collusively retained" certain "assets" that rightfully belonged to Leighton. The necessary elements to make out a claim for conversion are: (1) a showing that there is a property interest by the person claiming the property was converted; (2) that person had a right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for a return, which was refused by the holder. *Keyes Fibre Co. v. LaMarre,* 617 A.2d 213, 214 (Me.1992); *Chiappetta v. LeBlond,* 505 A.2d 783, 785 (Me.1986).

■ It is difficult to ascertain exactly what assets Leighton claims were converted—the securities he pledged or the restaurant equipment. Nevertheless, it was not error for the court to rule as a matter of law that a conversion claim must fail as to either of these two types of property. With regard to the securities, Fleet was within its rights to liquidate them because Leighton had pledged them in support of his guarantee on the Dinex Two loan. There can be no conversion of property by one who has a right to the property. *See Casco Bank & Trust Co. v. Cloutier,* 398 A.2d 1224, 1232 (Me.1979) (action for conversion fails as a matter of law where debtor has signed security agreement thereby giving secured party the right to seize and sell the collateral). As for the restaurant equipment, since we hold that Fleet did not have actual or constructive possession of it, Leighton's claim for conversion must fail. The claim against Deering that it aided and abetted the conversion must necessarily fail since it is pendent to the conversion claim against Fleet.

### Breach of fiduciary duty

■ Leighton argues that Fleet owed him a fiduciary duty that it breached when it transferred its mortgage interest to Deering. The Superior Court dismissed this claim on the ground that there was no fiduciary relationship and that the parties had arms-length dealings. When reviewing a Rule 12(b)(6) dismissal for failure to state a claim on which relief can be granted, we view the pleadings in a light most favorable to the plaintiff and determine whether the complaint stated grounds on which any claim may be brought. *Richards v. Soucy,* 610 A.2d 268, 270 (Me. 1992). We have held that fiduciary or confidential relations "are deemed to arise whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other." *Ruebsamen v. Maddocks,* 340 A.2d 31, 34–35 (Me.1975). Leighton's complaint fails to allege "the actual placing of trust and confidence" by Leighton in Fleet that is required to state a cause of action based upon a confidential relationship. *See id.* at 35. Additionally, it is necessary to show that there is some disparity in the bargaining positions of the parties and that the dominant party has abused its position of

---

2. Leighton also argues that as a guarantor he was entitled to the same commercially reasonable sale standard that debtors are entitled to in Article 9. Although we recognize that there is a split of authority on this issue, we need not decide this question since we hold that Fleet's actions did not result in constructive possession of the collateral, which would be the necessary finding to trigger the rights under the default provisions of Article 9 that involve commercial reasonableness. *See* 11 M.R.S.A. §§ 9–501–507 (1964 & Supp.1992).

trust. *Id.; see also Diversified Foods, Inc. v. First Nat. Bank of Boston,* 605 A.2d at 615 (disparity of position is necessary to establish existence of fiduciary relationship between lender and borrower). On the facts alleged, the court did not err in dismissing this count for failure to state a claim on which relief could be granted.

### Fraudulent conveyance

The Superior Court dismissed Leighton's claims that Fleet and Deering, through the transfer of the mortgage, had effected a fraudulent conveyance. Under the Uniform Fraudulent Transfer Act (UFTA), a transfer by a debtor is fraudulent "if the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." 14 M.R.S.A. § 3575 (Supp.1992). Leighton argues that since Fleet and Deering wrongfully gained assets through the mortgage transfer, they owe Leighton restitution, and because the transfer was done with the intent to defraud Leighton, it qualifies as a fraudulent transfer under the UFTA. It is certainly a strained reading of the facts to characterize Leighton as the "creditor" and Fleet and Deering as "debtors." The UFTA was designed to prevent debtors from transferring assets in order to avoid creditors.

That is not what happened here. Leighton does not allege facts sufficient to set forth a fraudulent conveyance with the UFTA. It was not error for the court to dismiss this claim for lack of merit.

### Unjust enrichment

The Superior Court dismissed Leighton's claim against Fleet for unjust enrichment on the grounds that it was "redundant." It is not necessary to address Leighton's argument that this was error since the unjust enrichment claim is dependent on the finding that there was a benefit retained by Fleet to Leighton's detriment, which, as the foregoing discussion illustrates, was not supported by the pleadings. *See A.F.A.B., Inc. v. Town of Old Orchard Beach,* 610 A.2d 747, 749 (Me.1992).

The entry is:

Judgment affirmed.

All concurring.