STATE OF MAINE
YORK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-00-120
GAC - YDR - 5/8/2001

FLEET NATIONAL BANK

Plaintiff

v.                                                                          DECISION

HAMILTON TROWBRIDGE REALTY
CORPORATION, HTH
CORPORATION and JEAN HAMILTON

Defendants

and

STATE OF MAINE DEPARTMENT
OF LABOR, STATE OF MAINE BUREAU OF
REVENUE SERVICES, and U.S.A. DEPARTMENT OF
TREASURY, INTERNAL REVENUE SERVICES

Parties-in-Interest

## BACKGROUND

In April 1989, HTH Corporation purchased a restaurant known as "Einstein's," located at 2 Shore Road in Ogunquit, Maine from Stephen Einstein. Jean Hamilton is the president of HTH Corp. The purchase of Einstein's included a lease arrangement that terminated by its terms at the end of five years with an option to purchase the real estate at the end of the five year period. Consequently, Jean Hamilton and her husband Richard Hamilton approached Fleet Bank in the summer of 1995 to discuss financing the purchase of 2 Shore Road.

1

The Hamiltons received a loan commitment from Fleet in October 1995 and the following transactions took place on March 6, 1996:

1. Hamilton Trowbridge Realty Trust Corporation ("Hamilton Trowbridge") executed and delivered a Note payable to Fleet Bank of Maine in the principle amount of $337, 500.00. Jean Hamilton is the President of Hamilton Trowbridge. This Note states that the "[b]orrower represents to the Lender that [the] promissory note evidences a loan which will be used for business or commercial purposes, namely the purchase of real estate located at 2 Shore Road, Ogunquit, Maine."

2. To secure the payments owed to Fleet under the Note, Hamilton Trowbridge executed and delivered to Fleet a Mortgage Deed in the principle amount of $337,500.000 ("first mortgage"). This mortgage does not state whether or not the mortgage was for commercial or business purposes.

3. HTH Corporation executed and delivered to Fleet a Note in the original principle amount of $50,000 (HTH Note). This Note states that the loan will be used for business or commercial purposes, namely, the payoff and refinance of a promissory note given to Steven Einstein. Defendants have admitted the existence of this loan, but maintain that changes may have been made at closing and therefore cannot verify that the document attached to the Complaint is a true and accurate copy of the document executed at the closing. Defendants do not provide any details regarding what changes they believe were made to the HTH Note.

4. Hamilton Trowbridge executed an Unconditional Guaranty of Payment and Performance with respect to the HTH Note.

5. To secure Hamilton Trowbridge's Guaranty, Hamilton Trowbridge executed and delivered to Fleet a Mortgage Deed in the principle amount of $50,000 ("second mortgage"). This mortgage does not state whether the loan was for business or commercial purposes.

6. Jean Hamilton executed and delivered to Fleet and Unconditional Guarantee of Payment and Performance with respect to both Hamilton Trowbridge's Note and the HTH Note.

7. In order to partially secure the obligations of these Guarantees, Jean Hamilton executed and delivered to Fleet a Conditional Assignment of Settlement Receivable.

8. To further secure Hamilton Trowbridge's Note, Hamilton Trowbridge executed and delivered to Fleet a Security Agreement covering personal property located at the mortgaged premises.

2

9. Hamilton Trowbridge executed and delivered to Fleet two Conditional Assignment of Leases and Rental agreements relating to the mortgaged premises.

10. HTH Corp. executed and delivered to Fleet a Security Agreement and UCC-1 filing statement covering all personal property on or related to its use of the mortgaged premises.

11. HTH Corp. executed and delivered to Fleet an Unconditional Guarantee of Payment and Performance with respect to Hamilton Trowbridge's Note.

As of the date of filing the Complaint, the record indices in the York County Registry of Deeds reflect the following subordinate liens other than and junior to the first and second mortgages on the premises secured by the mortgages:

(i) HTH Corp. by virtue of a Memorandum of Lease dated March 6, 1996.
(ii) J.M. Loughlin Refrigeration, Inc. by virtue of a Lien Certificate dated August 16, 2000.[1]

As of the date of filing the Complaint, the record indices in the York County Registry of Deeds and record indices of the Secretary of State, UCC Division, reflected the following subordinate liens other than and junior to the security interests held by Fleet in HTH Corp.'s personal property:

(i) the State of Maine, Department of Labor, by virtue of a lien against HTH Corp., dated May 6, 1996.
(ii) the U.S.A. Department of Treasury, Internal Revenue Service, by virtue of liens against HTH Corp. dated May 1, 1998.
(iii) the State of Maine, Maine Revenue Service, by virtue of a lien against HTH Corp. dated July 27, 2000.

When the closing took place there were tenants in the apartments above Einstein's at 2 Shore Road. At the time of the closing the Hamiltons anticipated living in one of these apartments as soon as they could legally remove the existing

---

[1]Fleet National Bank has moved to dismiss J.M. Loughlin Refrigeration as a party-in-interest. Loughlin's counsel never accepted service in this matter and has not filed as answer to the Complaint. Loughlin was named a party-in-interest due to its recorded lien against the mortgaged premises. Loughlin has subsequently released this encumbrance (see Release of Lien, attached to Fleet National Bank's Motion to Dismiss Non-Appearing Party in Interest).

tenants.

Count I of the Complaint alleges that Hamilton Trowbridge has defaulted on the first mortgage and has allowed superior municipal tax liens to be placed against the mortgaged premises. Count II of the Complaint alleges that Hamilton Trowbridge has defaulted on the second mortgage (HTH Note). Count III alleges that HTH has failed to pay Fleet under the terms of the HTH Note. Count IV alleges that Jean Hamilton is indebted to Fleet for the amount guaranteed under Hamilton Trowbridge's Note and the HTH Note. Count V alleges that HTH has failed to make payments due Fleet under the terms of its guaranty of Hamilton Trowbridge's Note

Defendants filed an Answer and Counterclaims and Affirmative Defenses. Defendants' Answer admitted only the location of the mortgaged premises, the averments relating to the residency of Jean Hamilton and the place of business of Defendant borrowers. Defendants otherwise claimed that they were without sufficient information to admit or deny the remaining allegations of Plaintiff's Complaint.

In their Counterclaim, Defendants assert that Plaintiff is guilty of fraud in the inducement (Affirmative Defense and Count I of Counterclaim); release of confidential information (Count II of Counterclaim); violation of duty of good faith and fair dealing (Count III); violation of the Maine Fair Debt Collection Practices Act (Count IV) and; abuse of process and malicious prosecution (Count V).

## DISCUSSION

### Procedural Considerations

Fleet has filed a Motion for Summary Judgment on its Complaint for Foreclosure, a Motion to Dismiss Defendants' Counterclaims and a Motion to Strike Defendants' Answer. Because both parties have offered submissions outside of the pleadings for this Court's consideration, the Court shall treat the Motion to Dismiss Defendants' Counterclaims as one for Summary Judgment. See M.R.Civ.P. 12(b).

4

In regard to Fleet's Motion to Strike Defendant's Answer, as noted above, Defendants originally admitted only the location of the mortgaged premises and the averments relating to the residency of Jean Hamilton and the place of business of the Defendants. Defendants originally alleged that they were without sufficient information to either admit or deny the execution and delivery of the loan documents in question. Defendants initially argued that these answers were consistent with their position that the loans and mortgages exist in some form, but that changes were made to the documents at closing, and these changes were not reflected in the exhibits attached to Plaintiff's Complaint. However, at oral argument, upon reviewing the original closing documents supplied by Plaintiff's attorney (with the exception of the HTH note, which was not produced by Plaintiff's counsel), Defendants acknowledged that no changes had in fact been made to the documents. As well, in Defendants' Statement of Material Facts Defendants admit, with the exception of the HTH Note, that the loan documents in question were executed and delivered and that no changes were made to these documents at closing. The Court will assume therefore that, with the exception of the HTH Note, the closing documents attached to the Complaint are true and accurate copies of the original documents. In so proceeding, the Motion to Strike Defendants' Answer becomes moot.

Summary Judgment

1. Fraud in the Inducement (Count I of Defendants' Counterclaim)

The Law Court has held that in order to successfully assert a claim of fraud in the inducement, a claimant must prove the existence of false representation and justifiable reliance thereon. Wildes v. Ocean National Bank of Kennebunk, 498 A.2d 601, 602 (Me. 1985). The basis of Count I of Defendants' Counterclaim is that prior to closing on any of the loans which are the subject of this action, loan officer

5

Christopher Bailey[2] promised Defendants a $15,000 line of credit because the Defendants would be short of cash at the time of closing. Defendants have alleged that prior to closing, Mr. Hamilton told Mr. Bailey that the anticipated closing was going to take all the Hamiltons' cash resources and once the closing took place the Hamiltons wouldn't have a "nickel" to their name and would need a line of credit to get through the winter. Defendants further allege that Mr. Bailey told the Hamiltons that he would take care of the line of credit after closing. Defendants allege that Mr. Bailey acted with malice, knowing such promise to be false and that they relied to their detriment upon this false assertion.

Plaintiff denies these allegations and has provided an affidavit from Mr. Bailey alleging that he never promised the Hamiltons a line of credit and that it is unusual to offer lines of credit to cash businesses such as restaurants. Mr. Bailey further states that lines of credit must be applied for (the Hamiltons never applied for a line of credit) and are subject to approval by more than one officer at the bank. Mr. Bailey notes that Mr. Hamilton was an employee of Maine National Bank for many years and argues that Mr. Hamilton was therefore aware of the nature of such loans.

"A summary judgment is proper if the pleadings, affidavits, or any other discovery materials establish that there is no genuine issue of material fact." Mundaca Investment Corp. v. Emery, 674 A.2d 923, 925 (Me. 1996). Summary judgment may be granted only where the facts before the court so conclusively preclude recovery by one party that judgment in favor of the other is the only possible result as a matter of law. Green v. Cessna Aircraft Co., 673 A.2d 216, 218 (Me. 1996). Count I raises an issue of material fact regarding whether or not Christopher Bailey fraudulently induced the Hamiltons to borrow funds by his promise to extend a $15,000 line of credit. Summary judgment in regard to Count I of the Counterclaim is denied.

[2]Count I of Defendant's Counterclaim alleges that "an officer of Fleet Bank" promised Defendants a $15,000 line of credit. However, it is apparent from Mr. Hamilton's Affidavit that Christopher Bailey is the "officer" in question.

6

## 2. Release of Confidential Information (Count II of Defendants' Counterclaim)

Count II of Defendants' Counterclaim states that "certain servants and employees of Fleet Bank of Maine told various persons, who had no right to know, confidential information about the status of the subject loan." Apparently the Defendants are not able to identify the "certain servants" involved, and do not state what information was disclosed when and to whom. Defendants argue that it is necessary proceed to discovery in order to determine the identity of the employees who provided the confidential information to various persons.

Unlike at common law, it is no longer necessary to plead precisely and fully every fact necessary to constitute the cause of action alleged. Yargeau v. City of Portland, 566 A.2d 1088, 1089 (Me. 1989). "In modern pleading practice, the purpose of the complaint is to provide the defendant with fair notice of the claim against him." Richards v. Soucy, 610 A.2d 268, 270 (Me. 1992). The allegations contained in Count II are uncertain and indefinite and do not provide fair notice to Plaintiff of the Defendants' claim.[3] Summary judgment in regard to Count II of the Counterclaim is granted.

## 3. Violation of Duty of Good Faith and Fair Dealing (Count III of Defendants' Counterclaim)

Count III of Defendants' Counterclaim alleges that the loans in question were over-secured and that Fleet knew prior to closing that cash shortfalls were likely to occur. Furthermore, Defendants allege that Fleet unreasonably refused to release one piece of security in order that Defendants could raise funds and continue making payments on the loans. The Defendants also claim that they could have re-financed the loans had Fleet released some collateral, but that Fleet and the Finance

---

[3]In addition, Defendants' Statement of Material Facts ¶ 20, which references Mr. Hamilton's affidavit and alleges that the Hamiltons have received information that bank employees violated the requirement of confidentiality is hearsay. Affidavits must "set forth such facts as would be admissible in evidence." M.R.Civ.P. 56(e).

7

Authority of Maine (FAME), a guarantor of the loans[4], unreasonably and unfairly refused to allow this new financing.

Contracts governed by the Maine version of the Uniform Commercial Code are subject to an covenant of good faith. 11 M.R.S.A. § 1-203 (1995)("Every contract or duty within this Title imposes an obligation of good faith in its performance or enforcement.") Although the Law Court has recognized a duty of good faith on the part banks requiring "honesty in fact", the Court has declined to adopt a more general common law duty of objective good faith and fair dealing under the U.C.C. Leighton v. Fleet Bank of Maine, 634 A.2d 453, 456 (Me. 1993); see also Diversified Foods, Inc. v. First National Bank of Boston, 605 A.2d 609, 613-14 (Me. 1992).

The conduct alleged by the Defendants, namely that (i) the loans were over-secured and; (ii) Fleet refused to release one piece of security to allow Defendants to re-finance the loans does not constitute a lack of good faith and fair dealing. The Defendants were represented by counsel and consented to the security arrangement when the Notes were signed. Fleet was not required by the Note, or by a duty of good faith to release security to Defendants, especially when Defendants had defaulted on their loan commitments. There is no evidence that Fleet acted dishonestly or in bad faith with ulterior motives in exercising their rights under the loan agreement. Summary judgment in regard to Count III of the Counterclaim is granted.

## 4. Violation of Maine's Fair Debt Collection Practices Act (Count IV of Defendants' Counterclaim)

Count IV of Defendants' Counterclaim alleges that the subject loans encumber the personal residence of Jean Hamilton, which she presently occupies, and secures a loan for "personal, family and household use." Defendants argue that

---

[4]In Count III of Defendants' Counterclaim, Defendants seem to acknowledge that the Finance Authority of Maine is a guarantor of the loans. However, in Defendants' Statement of Material Facts, Defendants dispute the fact that FAME guaranteed the loans.

because Fleet did not provide Ms. Hamilton with the notice required by 14 M.R.S.A. § 6111, Fleet could not legally accelerate the principle balance. This acceleration, it is alleged, violated the Maine Fair Debt Collection Practices Act. See 32 M.R.S.A. § 11001 et seq.

14 M.R.S.A. § 6111 provides that:

> With respect to mortgages upon residential property located in this State when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use, the mortgagee may not accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default . . . until at least 30 days after the date that written notice is given by the mortgagee to the mortgagor. . . .

In this case the "mortgagors" are Hamilton Trowbridge and HTH Corporation. Ms. Hamilton is a guarantor for both loans. Assuming, without deciding that Ms. Hamilton can be classified as a "mortgagor" for the purposes of § 6111,[5] the mortgages in question nonetheless do not secure a loan for personal, family or household use.

The Notes evidencing these loans specifically state, at the bottom of page two of each note, that "[t]he Borrower represents to the Lender that this promissory note evidences a loan which will be used for business or commercial purposes." The loan to Hamilton Trowbridge was for the purpose of purchasing property at 2 Shore Road, Ogunquit, which housed Einstein's restaurant and two rental units. The loan to HTH Corp. was for the purpose of "the payoff and refinance of promissory note given to Steven A. Einstein." At the time the mortgages were executed, Ms. Hamilton also executed a "Maine Commercial Mechanics' Liens and Persons in Possession Affidavit," indicating that the mortgages in question were commercial in nature.

The building at 2 Shore Road is located in the Downtown Business District. Residential uses are allowed in this zone only if such residential use is accessory to a

---

[5] 14 M.R.S.A. § 6204-B(5)(A) defines mortgagor as "any party obligated to the mortgagee on the debt secured by the mortgage, and all parties signing the mortgage deed, whether or not they are obligated to the mortgagee for the debt." The Court will assume that this definition of mortgagor applies in the context of § 6111.

business. The primary use of buildings located in the Downtown Business District must be for commercial or business purposes. In addition, the two loans which are the subject of this action are covered by a FAME loan guaranty. FAME does not guaranty residential home mortgages or mortgages securing loans which are primarily for consumer or personal use. As well, at the time the subject loans were negotiated and closed, loan officer Christopher Bailey worked as a loan officer in the Business Banking division and did not make consumer loans.

Defendants' Statement of Material Facts does not contradict the above information.[6] Defendants basically argue, however, that since the closing of the loans, the Hamiltons have moved into one of the rental units above the restaurant, and that because this unit is now the Hamiltons' primary residence, the mortgage in question secures a loan for personal, family or household use.

Defendants acknowledge that on March 6, 1996, the date of closing, there were tenants in the apartments at 2 Shore Road. At the time of closing the Hamiltons allege that they anticipated living in a portion of the building themselves, as soon as they could legally remove the existing tenants. However, just because the Hamiltons hoped to someday to reside at 2 Shore Road, does not covert the mortgages into a residential mortgage for personal, family or household use.

Because the loans in question were commercial in nature, Fleet was not required by 14 M.R.S.A. § 6111 to provide written notice to the Hamiltons of their right to cure. To hold otherwise would place an unreasonable burden on mortgagees to inquire into the status of each commercial loan before foreclosing to determine whether or not any part of the funds from the loan had subsequently been used for personal, family or household uses.

Defendants also seem to argue that the Maine Fair Debt Collection Act, 32 M.R.S.A. § 11001 et seq. has been violated by virtue of violating the notice provision

---

[6]There is one exception: Defendants do not believe that the Hamilton Trowbridge loan is guaranteed by FAME. See Defendants' Statement of Material Facts ¶¶ 37-41. However, as noted above, this assertion is seemingly contradicted by allegations contained in Count III of Defendants' Counterclaim.

10

of 14 M.R.S.A. § 6111. This Act applies to "consumer[s]" which are defined as "any natural person obligated or allegedly obligated to pay a debt." 32 M.R.S.A. § 11002(3). Corporations are legal persons, not natural persons. This Act therefore does not apply to Hamilton Trowbridge or HTH. Although the Act applies to Ms. Hamilton as a consumer, because she was not entitled to notice per 14 M.R.S.A. § 6111, as explained above, Fleet has not violated the Maine Fair Debt Collection Act by virtue of violating 14 M.R.S.A. § 6111. Summary judgment in regard to Count IV is granted.

5. Abuse of Process and Malicious Prosecution (Count V of Defendants' Counterclaim)

Count V of Defendants' Counterclaim alleges abuse of process and malicious prosecution based on the allegations that Fleet had no legal right to commence this foreclosure action (presumably because of alleged violations of 14 M.R.S.A. § 6111 and the Fair Debt Collection Practices Act) and prosecuted this action for the ulterior motive to collect an accelerated balance.

Malicious prosecution, which is more accurately termed "wrongful use of civil proceedings"[7] in the present context, exists where (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought. Pepperell Trust Co. v. Mountain Heir Financial Corp., 1998 ME 46, ¶ 15, 708 A.2d 651, 656 (citing RESTATEMENT (SECOND) OF TORTS § 674). Because favorable termination of the offending proceeding is an essential element of the claim, the Law Court has held that "a claim of wrongful

---

[7]In Pepperell Trust Company v. Mountain Heir Financial Corp. 1998 ME 46, 708 A.2d 651, the Law Court noted that malicious prosecution (or wrongful use of criminal proceedings) and wrongful use of civil proceedings have traditionally been referred to under the common heading of malicious prosecution. Id. ¶ 14, 708 A.2d at 656. However, claims within civil actions are more properly labelled "wrongful use of civil proceedings." See id.

11

use of civil proceedings may not be brought as a counterclaim to the offending proceeding." Id. at ¶ 19, 708 A.2d at 657. Defendants' Counterclaim alleging malicious prosecution is therefore inappropriately alleged.

The elements necessary to establish an abuse of process are (1) the use of process in a manner improper in the regular conduct of the proceeding and; (2) the existence of an ulterior motive. Potter, Prescott, Jamieson & Nelson v. Campbell, 1998 ME 70, ¶ 7, 708 A.2d 283, 286. The filing of a Complaint alone cannot be the basis for an abuse of process claim. Id. The "[f]iling of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent." Id. In Potter, the Court noted that typical abuse of process cases involve the misuse of individual legal procedures as discovery, subpoenas and attachment. Id. The tort of abuse of process is therefore inapplicable to the present case. Summary judgment in regard to Count V is granted.

6. Fleet's Motion for Summary Judgment on its Foreclosure Complaint

In its Motion for Summary Judgment on its Foreclosure Complaint, Fleet alleges that Defendants have not been current with the Note payments and that Defendants have also breached the terms of the Notes by failing to pay municipal real estate taxes. Fleet alleges that it has paid this tax lien and that this nonpayment of real estate taxes is a separate and actionable breach of the mortgage covenants entitling Fleet to foreclose on the mortgages.

Defendants do not deny that "a number of the monthly payments provided in the notes have not been paid." Neither does Defendant deny that they have failed to keep the mortgaged premises free of tax liens and that Plaintiff has paid one tax lien on the premises. However, Defendants claim that both the failure to make the monthly payments and the failure to keep the premises free of tax liens were

12

caused by the failure of Fleet to provide a line of credit as promised.[8] Therefore, there is apparently no dispute regarding the fact that Defendants have defaulted on the loans and failed to keep the premises free of tax liens. Summary judgment on Plaintiff's Complaint cannot be granted, however, because, as discussed above, a material issue of fact exists involving the alleged line of credit promised to Defendants. In essence, Count I of Defendants' Counterclaim, the only Counterclaim remaining, precludes the granting of Summary Judgment on Plaintiffs Complaint for Foreclosure.

Defendants argue that summary judgment is precluded where a portion of the total amount owed is in dispute. Defendants argue that in the present case the question of how much money is owed is unresolved because of the potential "offsets" stemming from Defendants' Counterclaims. However, the Court finds that the total amount owing to Plaintiff is not disputed. Count I of Defendants' Counterclaim, although precluding summary judgment, cannot be properly characterized as an "offset" that affects the total amount owing plaintiff. Rather, the issue presented by Count I is whether or not an officer of Fleet fraudulently induced the Defendants to borrow funds with a promise to extend a $15,000 line of credit.


CONCLUSION

For the above reasons, Plaintiff's Motion for Summary Judgment is granted as to Counts II, III, IV & V of Defendants' Counterclaims. Plaintiff's Motion for Summary Judgment on its Foreclosure Complaint and Count I of Defendants' Counterclaim is denied. It should also be noted that although Defendants no longer put forth a serious argument regarding the authenticity of the HTH Note, Plaintiff's

---

[8]In their statement of material facts, Defendants sometimes refer to "set-offs." Apparently they are referring to the alleged failure of Fleet to provide a line of credit as promised. For example, DSMF ¶ 22 states that "[i]t is not denied that a number of the monthly payments provided in the notes have not been paid. Defendants deny they owe said payments because of the set-offs described in the Supplemental Affidavit of Richard Hamilton." The paragraph in Hamilton's affidavit referenced merely states that the amounts Fleet alleges are due are not true because they are not adjusted for the claims made in Defendants' Affirmative Defenses and Counterclaims.

counsel should be prepared to present the original document for the Court's and

Defendants' inspection. At the direction of the Court, this Order shall be incorporated into the docket by reference. Rule 79(a).

May 8 , 2001

G. Arthur Brennan
Justice, Superior Court

Colleen P. Tucker, Esq. - PL
Mark A. Kearns, Esq.  -  DEFS. HAMILTON TROWBRIDGE REALTY TRUST & JEAN C. HAMILTON
Pamela W. Waite, AAG -  PII - MAINE DEPT. OF LABOR
Frederick Emery, Jr., Esq. - PII - USA DEPT. OF THE TREASURY
Stanley W. Piecuch, AAG - PII - STATE OF MAINE, MAINE REVENUE SERVICES

14