MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 76
Docket:      Cum-19-440
Submitted
  On Briefs:  May 12, 2020
Decided:     May 28, 2020

Panel:       MEAD, GORMAN, JABAR, HORTON, and CONNORS, JJ.

FINANCE AUTHORITY OF MAINE

v.

MARTIN S. GRIMNES et al.

HORTON, J.

[¶1]  Martin S. Grimnes, guarantor of a promissory note held by Finance Authority of Maine (FAME), appeals from a judgment entered against him after a bench trial in the Superior Court (Cumberland County, *Mills, J.*).[1]  Grimnes does not dispute (1) the default of the principal debtor on the note, (2) the amount outstanding on the note, or (3) his liability to FAME under the terms of his unconditional personal guaranty.  He also acknowledges that FAME has taken no action to enforce its security interest in the collateral securing the note, and concedes, consistent with the language of his guaranty, that it was not

---

[1]  The principal debtor on the note, Harbor Technologies, LLC, was also a named defendant in this matter, but it is not a participant in this appeal.  A default judgment was entered against it on January 24, 2019.  At trial, Grimnes indicated that it no longer exists as a business entity.

2

obligated to do so before proceeding directly against him. Nevertheless, he contends that two of the default provisions contained in Article 9 of Maine's Uniform Commercial Code (U.C.C.)—11 M.R.S. §§ 9-1607 and 9-1626 (2020)—imposed a burden on FAME to prove the commercial reasonableness of its decision not to pursue the collateral before it could obtain a judgment against him, and that FAME failed to meet this burden. We disagree in light of the independent and unconditional nature of Grimnes's guaranty and affirm the judgment.

## I. BACKGROUND

[¶2] The following undisputed facts are drawn from the court's judgment, the parties' written stipulation of facts, and the parties' stipulated exhibits.

[¶3] In 2009, FAME extended a loan of $300,000 to Harbor Technologies, LLC (Harbor), a Maine limited liability company. Harbor executed a promissory note and a security agreement under which assets of the company, including machinery, equipment, and intangible assets, were pledged as collateral to secure the note. Grimnes executed a personal guaranty of Harbor's obligations to FAME. Grimnes's guaranty included the following provisions:

> [Grimnes] further agrees that each of its undertakings . . . constitutes an absolute, unconditional, present and continuing

guaranty of payment and not just of collection, and waives any right to require that any resort be had by [FAME] to . . . any security held by [FAME] . . . .

. . . .

. . . Upon an Event of Default . . . [FAME] shall have the right to proceed first and directly against [Grimnes] under this Guaranty without proceeding against or exhausting any other remedies which it may have and without resorting to any security held by it.

[¶4] After Harbor defaulted on the loan, FAME accelerated the note and made demand upon Harbor and Grimnes for payment of the balance due under the note. When payment was not forthcoming, FAME sued Harbor on the note and Grimnes on his guaranty for the entire amount due.

[¶5] FAME never took possession or otherwise proceeded against any of the collateral in which it held a security interest.

## II. DISCUSSION

[¶6] Although Grimnes concedes that the terms of his guaranty permitted FAME to proceed against him without attempting to collect from the collateral pledged as security on the note, he contends that the U.C.C. required FAME to prove that its decision not to proceed against the collateral was

4

commercially reasonable. Because FAME did not do so, Grimnes argues, the court erred by entering judgment in its favor.

[¶7] As the primary basis for his argument, Grimnes cites 11 M.R.S. § 9-1607(3)(a), which provides that "[a] secured party shall proceed in a commercially reasonable manner if the secured party . . . [u]ndertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral." Grimnes maintains that he is an "account debtor" or, as a guarantor, at least an "other person obligated on collateral," and that FAME's effort to collect from him is therefore subject to an obligation to act in a commercially reasonable manner.

[¶8] Grimnes also contends that, because he is challenging FAME's compliance with its obligations under the U.C.C., section 9-1626 puts the burden on FAME to prove that its decision to forego proceeding against the collateral was commercially reasonable. *See* 11 M.R.S. § 9-1626(1)(b) ("If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition or acceptance was conducted in accordance with this part.").

[¶9]  FAME responds that Article 9 of the U.C.C. does not apply to its claim against Grimnes because the claim arises from Grimnes's independently enforceable guaranty of Harbor's obligation to FAME.  We agree.[2]

[¶10]  Grimnes is neither an "account debtor" nor an "other person obligated on collateral" for purposes of section 9-1607.  Section 9-1607 makes it clear that an "account debtor or other person obligated on collateral" is a person who owes an obligation to the debtor in a situation where the debtor has pledged that obligation as collateral.  *See id.* § 1607(1)(c) ("If so agreed, and in any event after default, a secured party . . . [m]ay enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor . . . ."); *see also* Timothy R. Zinnecker, *The Default Provisions of Revised Article 9 of the Uniform Commercial Code: Part 1*,

---

[2]  Grimnes's guaranty could have been drafted so that his obligation to pay was conditioned on FAME first seeking satisfaction from the collateral securing the note.  *See* Restatement (Third) of Suretyship & Guaranty § 51 (Am. Law Inst. 1996) (stating that an "obligee need not enforce its security interest in collateral for the underlying obligation before enforcing the secondary obligation" unless, among other things, the "failure of efforts by the obligee to obtain satisfaction of the underlying obligation is a condition of the secondary obligor's duty pursuant to the secondary obligation").

54 Bus. Law. 1113, 1131-32 (1999) (providing illustrations of how this section of the U.C.C. operates).

[¶11]   In the context of this case, the terms "account debtor or other person obligated on collateral" would refer to entities obligated to Harbor on collateral pledged as security for FAME's loan, such as a person indebted to Harbor on an account.  Section 9-1607(3)(a) does not impose any requirement of commercial reasonableness upon FAME because it has not sought to collect from persons who are obligated to Harbor.

[¶12]   Moreover, the protections contained in the default provisions of Article 9 apply only when a secured party opts to enforce its security interest in collateral.  *See* U.C.C. § 9-601 cmt. 2, *included with* 11 M.R.S.A. § 9-1601 (2014); *see also Leighton v. Fleet Bank of Me.*, 634 A.2d 453, 456 (Me. 1993) (holding, pursuant to a prior version of the default provisions of Article 9, that "[i]n order for any of the rules regarding the disposition of collateral to come into effect, . . . the creditor must actually take possession of the collateral").

[¶13]   This principle is illustrated by both of the sections cited by Grimnes.  As noted above, section 9-1607 imposes a duty on a secured party to act in a commercially reasonable manner when it undertakes to collect on or enforce its rights in collateral, such as a debtor's accounts receivable.  *See* U.C.C.

§ 9-607 cmts. 2-3, *included with* 11 M.R.S.A. § 9-1607 (2014 & Supp. 2020). Section 9-1626 puts the burden on a secured party, if challenged, to prove its compliance with the default provisions in actions where "the amount of a deficiency or surplus is in issue, *i.e., situations in which the secured party has collected, enforced, disposed of, or accepted the collateral.*"  U.C.C. § 9-626 cmt. 2, *included with* 11 M.R.S.A. § 9-1626 (2014) (emphasis added).

[¶14]  Clearly, FAME was not attempting to collect or enforce on collateral by pursuing a judgment against Grimnes, and, having taken no action to enforce its security interest in the collateral, its action was not one where a deficiency was at issue.  *See* James J. White et al., 4 *Uniform Commercial Code* § 34:7 at 539 n.3 (6th ed. 2015) ("A deficiency, as the name implies, is the amount by which the net sum obtained from resale of the collateral falls short of the debt outstanding at the time of default.").  As the leading treatise on the U.C.C. explains, a secured creditor such as FAME "can ignore its security interest and obtain a judgment on the underlying obligation and proceed by execution and levy.  *The Code does not say what a creditor must do to obtain a judgment and execution on the debt.*"  *Id.* § 34:7 at 539 (emphasis added).

[¶15] Accordingly, the court was correct when it determined that neither section 9-1607 nor section 9-1626 required FAME to prove the commercial

reasonableness of its decision not to pursue the collateral before it could obtain

a judgment against Grimnes.[3]

The entry is:

Judgment affirmed.

George J. Marcus, Esq., and John H. Doyle, Esq., Marcus Clegg, Portland, for appellant Martin Grimnes

Daniel R. Felkel, Esq., Troubh Heisler LLC, Portland, for appellee Finance Authority of Maine

---

[3] Because we conclude that the U.C.C. provisions upon which Grimnes relies do not apply in the circumstances of this case, we do not address Grimnes's argument, based on 11 M.R.S. § 9-1602 (2020), that a guarantor may not waive commercial reasonableness prior to default.