STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                                   LOCATION: Portland
                                                  DOCKET NO. BCD-CIV-2022-00017

JOHN POYNOR and PURGATORY          )
PLANT & EXTRACT CO., LLC,          )
                                   )
            Plaintiffs,            )
                                   )          **ORDER GRANTING IN**
      v.                           )          **PART AND DENYING IN**
                                   )          **PART DEFENDANT'S**
RYAN HENDERSON,                    )          **MOTION TO DISMISS**
                                   )
            Defendant.             )


## INTRODUCTION

This case results from a falling out between joint owners of a cannabis business in Casco, Maine. Plaintiffs John Poynor ("Poynor") and Purgatory Plant & Extract Co., LLC ("Purgatory") have sued Defendant Ryan Henderson ("Henderson") for numerous Counts: (I) Conversion, (II) Negligence, (III) Breach of Fiduciary Duty, (IV) Bad Faith and Damages, (V) Direct Action, 31 M.R.S. § 1631, (VI) Expulsion by Judicial Order, 31 M.R.S. § 1582(5), and (VII) Violation of 31 M.R.S. § 1558. The matter presently before the Court is a Motion to Dismiss Plaintiffs' Complaint under M.R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, the Court GRANTS in part and DENIES in part Henderson's Motion. Count I is dismissed; the remaining Counts survive.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court will "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to

1

relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). Dismissal is warranted "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id*.

<u>FACTUAL ALLEGATIONS</u>

Per the instant Complaint, Poynor and Henderson founded Purgatory as a Maine limited liability corporation on September 13, 2017. They are both members and managers of the company. They agreed to be bound by Purgatory's LLC Agreement. The company's business is cannabis cultivation, sales, and service. Purgatory also does business under the name East & Eye Cannabis Co. Poynor, a resident of Cedar Park, Texas is a 40% owner of Purgatory. Henderson, a resident of Portland, Maine is a 60% owner.

On April 11, 2021 Henderson verbally stated to Poynor, "where I'm from, people like you get smacked," and sent an email telling Poynor not to return to Purgatory's leased premises and base of operations in Casco, Maine. On January 29, 2022 Henderson, who controls Purgatory's social media accounts, posted on the company's Instagram account "Fuck Around and Find Out." Poynor requested Henderson remove the post and Henderson subsequently blocked Poynor from accessing Purgatory's Instagram account. Also on January 29, 2022 Henderson stated he planned to "finish the job."

On January 31, 2022 Henderson fired an employee who complained about not timely receiving payment and about Henderson's absence from work. On February 1, 2022 Henderson texted Poynor, "[t]o be clear these plants will not have any care, lights will be turned off, equipment will be sold and I am not waiting for permission." On or about that same day, Henderson began covering or moving security cameras at the Casco place of operations.

2

Poynor has contributed at least $404,731.00 in capital and expense payments for the benefit of Purgatory and two years ago requested Henderson initiate a plan of operations to return capital. Henderson's contribution to Purgatory is limited to his "services rendered." Poynor has received no salary from Purgatory and the only money he has gotten is a single $500 payment on August 1, 2020 for the return of capital. Henderson has been paying himself for his management services since Purgatory's founding.

Poynor, Henderson, and Purgatory are bound by a lease to real estate and a building in Casco, Maine which requires Purgatory to pay $4,000 per month in rent. Purgatory made late rent payments in the past and in January 2022, and failed to pay in February 2022, forcing Poynor to pay $4,000 for that month's rent. Poynor has also had to provide assurances to the landlord due to Henderson's strained relations.

Henderson has not provided an accounting of funds received from sales, an accounting of expenses, or a list of employees and salaries since the founding of Purgatory. He has not provided evidence of paying workers, such as in the form of 1099s or W-2s, nor has he provided Poynor with requested Purgatory bank statements or client names. Poynor now fears for himself, his employees, and the preservation of Purgatory's assets.

On February 1, 2022 Poynor obtained a Temporary Protection Order from Henderson. On February 15, 2022 Henderson sent an email to Purgatory's landlord terminating the lease, citing the "liquidation and closing" of Purgatory. As of the filing of the instant Motion, Henderson has not been served the Temporary Protection Order and Poynor believes he is avoiding service.

DISCUSSION

Henderson moves to dismiss Plaintiffs' Complaint for failure to state a claim and makes numerous arguments as to why such dismissal is warranted: (1) the Complaint does not state a

viable cause of action for conversion; (2) the LLC Agreement exculpates Henderson from any claims for damages under the alleged facts; (3) the Economic Loss Doctrine bars Poynor's tort claims; (4) Maine law does not recognize a standalone action for "bad faith;" (5) Poynor's demand for Attorney fees lacks a basis; (6) Poynor lacks standing to seek judicial expulsion of Henderson from Purgatory; and (7) Poynor cannot press a claim § 1558 against another individual LLC member, only against the LLC itself.

1) <u>Count I: Conversion</u>

Proving the tort of conversion requires a showing that (1) the plaintiff has a property interest in the property; (2) the plaintiff had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. A demand for the property's return is not necessary "where circumstances show that a demand would be useless." *Id.* ¶ 7. The tort of conversion is limited to personal property and cannot be pressed for the dispossession of an interest in real property. *Morton v. Burr*, BCD-RE-2013-03 at *19 (Bus. & Consumer Ct. Jan. 16, 2014, *Nivison, J.*) (citing 1 DAN D. DOBBS ET AL., THE LAW OF TORTS § 63 at 174 (2d ed. 2011). Further, there is no conversion of property by one who has a right to the property. *Leighton v. Fleet Bank*, 634 A.2d 453, 457 (Me. 1993).

Poynor argues that Henderson is liable for conversion because he retains a portion of the rented premises in his sole control and prohibits Poynor from entering or using it; uses Purgatory's company debit card for personal expenses; and based on information Henderson has reported and shared with Poynor, Purgatory is generating four to five times less revenue that a similarly situated enterprise with similar electricity demands. Poynor alleges Henderson has withheld Purgatory's transaction ledger and client list, thereby limiting the specificity with which Poynor can state what

4

amount of assets Henderson has converted. It is unclear to what extent Poynor demanded the "return" of property, but seen in the light most favorable to him, he believed it to be useless. Regardless, as joint members and managers of the LLC, both Poynor and Henderson have property interests in Purgatory's assets, and both have the right to possession. Restricting Poynor's access to the Casco leasehold cannot be subject to a conversion claim because it relates to real, not personal, property. Poynor's remaining two bases for conversion do not generate a viable claim. Improper use of company funds or the illicit acts or omissions Poynor believes are the cause of Purgatory's declining revenue may violate the LLC Agreement or sound in contract or some other business tort claim, but not conversion. The Count I claim for conversion is dismissed for failure to state a claim.

2) Counts II & III: Negligence and Breach of Fiduciary Duty

Henderson argues that Poynor's claims for negligence and breach of fiduciary duty are barred by the exculpation clause of Purgatory's LLC Agreement. Henderson points out: "It is the policy of [the LLC Act] and this State to give maximum effect to the principles of freedom of contract and to the enforceability of limited liability company agreements." 31 M.R.S. § 1507(1). Here, Article XI of the LLC Agreement reads as follows:

> The doing of any act or the failure to do any act by Members or Manager(s), the effect of which may cause or result in loss or damage to the Company or its property, shall not subject the Members or Manager(s) to any personal liability *to the Company*, unless the Member or Manager's acts or omissions constituted gross negligence, intentional misconduct, or a knowing violation of the law. The Company shall indemnify the Members and Manager(s), and shall make advances for expenses incurred in defense of claims of liability to the maximum extent permitted under the [LLC] Act. The right to indemnification under this Agreement shall be fully vested with respect to any matter. No amendment to this Agreement shall have any retroactive effect except to enhance such right for the benefit of the indemnified party. (emphasis added)

5

However, Henderson's argument fails for two reasons. First, Article XI only bars liability to the Company. It does not by its terms prevent the imposition of liability between members. Furthermore, an LLC Agreement can only waive fiduciary duties (and resulting claims for violation thereof) if it does so expressly, which is not the case here. *See Gleichman v. Scarcelli*, No. BCD-CV-17-11, at \*27 (Me. Bus. & Consumer Ct., March 7, 2019). Second, whether couched as negligence or breach of fiduciary duty, when viewed in the light most favorable to Poynor, the facts can be interpreted to rise to the level of gross negligence, intentional misconduct, or a knowing violation of law. Thus, at this stage of the proceeding, Counts II and III state claims sufficient to with withstand the Motion to Dismiss. The Motion is denied as to Counts II and III.

Henderson nevertheless asserts that the economic loss doctrine bars any recovery for actions in tort which seek damages for purely economic losses. *See Oceanside at Pine Point Condominium Owners Assn. v. Peachtree Doors*, 659 A.2d 267, 270 (discussing economic loss doctrine as it pertains to claims of injury caused by defective products). Although there may be some mission creep for applying the economic loss doctrine beyond its origins in defective product litigation, *see, e.g. Gannett v. Pettegrow*, 2005 U.S. Dist. LEXIS 1357, at \*19 (D. Me. Jan. 28, 2005), Henderson can point to no authority applying the doctrine to cases involving claims for breach of fiduciary duty. Moreover, at this early stage of the litigation, viewed in the light most favorable to Poynor, the harm may involve other than purely economic loss. Accordingly, the Motion to Dismiss on the grounds of the economic loss doctrine is denied.[1]

3) <u>Count IV: Bad Faith and Damages</u>

---

[1] Henderson's Motion is also denied to the extent it seeks to dismiss various forms of damages, which may or may not be available in connection with the various surviving claims. It is too early in the litigation for the Court to have a sound basis to make a determination about damages.

In Count IV, Poynor alleges Henderson is liable for "bad faith and damages." This refers, in part, to the non-dispensable duty not to violate the implied contractual covenant of good faith and fair dealing. § 1522(2). An LLC Agreement cannot "[e]liminate or limit a member's liability to the limited liability company and members for money damages for a bad faith violation of the implied contractual covenant of good faith and fair dealing." § 1552(1)(F). Henderson argues Poynor's claim cannot stand on its own because the Law Court states in *Chartier v. Farm Family Life Ins. Co.* that breach of this covenant is not an independent action. 2015 ME 29, ¶ 7, 113 A.3d 234. However, viewed in the light most favorable to Poynor, Poynor is not pursing an independent action, but rather a claim for breach of the LLC Agreement in violation of the implied covenant. § 1559(1). Section 1559(2) permits a member to be held personally liable for his or her failure to discharge duties where the member acted dishonestly or contrary to the best interests of the company or its members. These allegations are sufficient to state a claim, and the Motion to Dismiss Count IV is denied.

4) Counts V: Direct Action

Section 1631 of the LLC Act provides that a member of an LLC "may maintain a direct action against another member. . . to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the [LLC Agreement] or this chapter or arising independently of the membership relationship." The direct action must relate to an injury which is "not solely the result of an injury suffered. . . by the limited liability company." § 1631(2). Poynor argues that his having been forced to cover Purgatory's expenses which Henderson refused to pay despite giving himself a salary are outside the scope of the LLC Agreement and constitute a threatened injury to Poynor because not paying would have negatively affected his credit. He also cites Henderson's allegedly willful mismanagement of Purgatory, and creation of debts

7

against the company's interest as bases for direct action. Henderson responds primarily with the argument that under the LLC Agreement members are not obligated to make additional contributions. Poynor's claim, however, viewed in the light most favorable to him, is not limited to the issue of additional contributions. The Motion to Dismiss is denied as to Count V.

5) Count VI: Judicial Expulsion

Poynor seeks judicial expulsion of Henderson from Purgatory. Henderson counters that an application for expulsion can only be brought by Purgatory. 31 M.R.S. § 1582(5). However, a member is entitled to bring a derivative action to enforce a right of a limited liability company. 31 M.R.S. § 1632. Here, the Complaint is brought in the name of both Poynor and Purgatory, and although the Complaint contains no allegation that Poynor first made a demand on the company to expel Henderson, seen in the light most favorable to Poynor such a demand would have been futile. § 1632(2). Accordingly, the Motion to Dismiss is denied as to Count VI.

6) Count VII: Right to Information

Pursuant to 31 M.R.S. § 1558, in Count VII Poynor seeks access to company information being withheld by Henderson. Henderson contends the claim must be rejected, on the grounds that a claim under Section 1558 can only be brought against the company, not a member. However, Henderson cannot point to any language in Section 1558 so restricting the action. Accordingly, the Motion to Dismiss is denied as to Count VII.

## CONCLUSION

Based on the foregoing, the entry will be: Defendant Ryan Henderson's Motion to Dismiss is GRANTED as to Count I (conversion) and that claim is dismissed. Henderson's Motion to Dismiss is DENIED as to Counts II (negligence), III (breach of fiduciary duty), IV (bad faith and damages), V (direct action), VI (judicial expulsion), and VII (right to information).

8

SO ORDERED.

The Clerk is instructed to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Date:   **06/30/2022**

_____

Michael A. Duddy, Judge
Business & Consumer Court

Entered on the docket:  06/30/2022