Jerome A. MOORE, Jr.

v.

MAINE INDUSTRIAL SERVICES, INC. et al.

Supreme Judicial Court of Maine.

Argued March 16, 1994.

Decided Aug. 3, 1994.

Ralph A. Dyer, Law Offices of Ralph A. Dyer, P.A., Portland, for plaintiff.

Sidney St. F. Thaxter (orally), Catherine Charette, Curtis Thaxter Stevens Broder & Micoleau, Mary Delano, Amerling & Burns, P.A., Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ., and COLLINS, A.R.J.[*]

DANA, Justice.

Plaintiff Jerome A. Moore, Jr., a minority shareholder of Maine Industrial Services, Inc., appeals from the entry of a summary judgment in the Superior Court (Cumberland County, *Fritzsche, J.*) in favor of Edward Hammond, Harold Hodgins, Thomas O'Connor, Paul Stuart, and John Swansburg (the majority shareholders), who in turn cross-appeal from the dismissal of their counterclaims. Moore argues, *inter alia*, that the court erred in ruling that the majority shareholders did not owe him a fiduciary duty. The majority shareholders argue that the court erred in ruling that they have no standing to maintain their claims against Moore for breach of a fiduciary duty, appropriation of business opportunities, and cancellation of shares. We agree with the parties' contentions and vacate the judgments.

Moore established Maine Industrial in July 1986. Its articles of incorporation provided that Maine Industrial would have no directors and that it would be "managed by the shareholders." Its bylaws likewise provided that "[a]ll powers, authorities, privileges and rights ordinarily delegated to Directors are retained by the shareholders." [1]

Moore was originally the president and sole shareholder of Maine Industrial. In the fall of 1986 he invited the majority shareholders to make an investment of $56,000, for which they received seventy percent of the outstanding shares. Moore owned the remaining thirty percent, for which he allegedly paid $24,000.

In February 1990 Moore and his wife, who was Maine Industrial's treasurer at the time, personally guaranteed a $200,000 bank loan and a $350,000 bank line of credit to the corporation. A year later the majority shareholders voted to remove Moore as president, having already removed his wife seven weeks earlier.

Moore's complaint, which was later amended to reflect the corporation's bankruptcy, contained claims for breach of a fiduciary duty, conversion, and corporate waste and mismanagement. It alleged that the majority shareholders squeezed Moore out of Maine Industrial through a variety of actions, including: (1) paying dividends only to themselves from the line of credit Moore had guaranteed; (2) decreasing Moore's corporate authority and increasing their oversight of his management decisions; (3) terminating his wife as treasurer; (4) terminating him as president without cause or notice; (5) forming a board of directors to further isolate him; and (6) falsely accusing him of embezzlement. The complaint further alleged that the majority shareholders operated the corporation "in a fraudulent, negligent and wasteful manner" resulting in its bankruptcy.

The majority shareholders denied the material allegations of the amended complaint and filed a counterclaim alleging, *inter alia*, that Moore negligently managed Maine Industrial, that he used corporate funds and equipment for personal gain, that he wrongfully competed with the corporation and in-

---

[*] Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity as Active Retired Justice.

[1] The parties do not dispute that Maine Industrial is a close corporation under Maine law. Title 13-A M.R.S.A. § 102(5) (1981) defines a close

corporation as a "corporation ... which, at any given time, has not more than 20 shareholders." Title 13-A M.R.S.A. § 701(2) (Supp.1993) further provides that "[i]f the articles of incorporation of a close corporation expressly so provide, the business of such close corporation shall be managed by the shareholders of the close corporation rather than by a board of directors."

terfered with its contracts, and that he never paid for his stock.

After extensive discovery, Moore filed a motion to dismiss the counterclaim.· The majority shareholders responded with a motion to dismiss Moore's complaint or, in the alternative, for a summary judgment.[2] The Superior Court granted both motions.

## I. *Summary Judgment*

■ A summary judgment is properly granted when the record reveals that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R.Civ.P. 56(c). When a party appeals from a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was entered, and review the trial court's decision for error of law. *Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me.1992).

### A. *Fiduciary Duty*

■ Title 13–A M.R.S.A. § 716 (Supp. 1993) provides that "[t]he directors and officers of a corporation shall exercise their powers and discharge their duties in good faith with a view to the interests of the corporation and of the shareholders." Since Maine Industrial's bylaws provide that the shareholders shall act as directors, Moore argues that the statutory duty of good faith applies to the majority shareholders. They respond that section 716 "clearly imposes a fiduciary duty only on directors and officers ... and says nothing about intra-shareholder duties."

There is substantial support for Moore's position. As explained in 2 F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations* § 8.08 at 75 (3d ed. 1992):

The view that the controlling shareholders and the directors do not owe fiduciary

duties to minority shareholders is outmoded, at least as applied to attempts to eliminate minority shareholders from the enterprise or deprive them of their proportionate powers and rights without a just equivalent.

In fact, in almost every state, "majority, dominant, or controlling shareholders, or a group of shareholders acting together to exercise effective control, are held to owe a fiduciary duty to the minority shareholders." 18A Am.Jur.2d *Corporations* § 764 at 632–33 (1985) (footnotes omitted). *See also Wilkes v. Springside Nursing Home, Inc.,* 370 Mass. 842, 353 N.E.2d 657, 661–62 (1976) (stockholders in a close corporation owe one another the duty of utmost good faith and loyalty); *Principles of Corporate Governance: Analysis and Recommendations* pt. V, § 5.01 at 274 (Proposed Final Draft 1992) ("A number of modern decisions recognize the general obligations of directors ... and controlling shareholders to deal fairly with their corporation and minority shareholders."); 18A Am.Jur.2d *Corporations* § 732 at 602 ("if a shareholder exercises actual control and direction over corporate management, a fiduciary duty will be imposed").

We find the above authority both convincing and in accordance with the provisions of the Maine Business Corporation Act, 13–A M.R.S.A. §§ 101–1406 (1981 & Supp.1993). As section 716 provides, directors "shall exercise their powers and discharge their duties in good faith with a view to the interests of the corporation *and of the shareholders.*" 13–A M.R.S.A. § 716 (emphasis added).[3] When shareholders in a close corporation act as directors, as they are permitted to do pursuant to 13–A M.R.S.A. § 701(2), they assume the statutory duties imposed on directors. *See* 13–A M.R.S.A. § 701(2)(A)–(B)

---

2. Since "matters outside the pleading [were] presented to and not excluded by the court," the majority shareholders' motion is treated as one for a summary judgment. M.R.Civ.P. 12(b)(6); *Levasseur v. Aaron,* 503 A.2d 1291, 1292 (Me. 1986).

3. We note that section 716 further provides as follows:

A director shall not be held personally liable for monetary damages for failure to discharge any duty as a director unless the director is

found not to have acted honestly or in the reasonable belief that the action was in or not opposed to the best interests of the corporation or its shareholders.

13 M.R.S.A. § 716. This defense is a codification of the business judgment rule. *See* L.D. 2549, Statement of Fact (113th Legis.1988). The majority shareholders did not argue before the Superior Court or in this appeal that its application bars Moore's recovery.

(1981) ("Whenever the context requires, the shareholders of [a] close corporation shall be deemed directors of such corporation for purposes of applying any of the provisions of this Act; and ... [t]he shareholders of such close corporation shall be subject to the liabilities imposed by this Act for action taken or neglected to be taken by directors...."). Because the record in this case contains ample evidence that the majority shareholders acted as directors,[4] we conclude that the Superior Court erred in entering a summary judgment on this claim.[5]

### B. Conversion

■ "The gist of conversion is the invasion of a party's possession or right to possession." *Chiappetta v. LeBlond,* 505 A.2d 783, 785 (Me.1986). The necessary elements of a claim for conversion are: (1) a showing that there is a property interest by the person claiming the property was converted; (2) that the person had a right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for a return, which was refused by the holder. *Leighton v. Fleet Bank of Maine,* 634 A.2d 453, 457 (Me.1993).

Count IV of Moore's amended complaint alleged that:

> [T]he [majority shareholders] converted the credit of Moore by wrongfully appropriating financing provided by Moore to [Maine Industrial] in the form of loans totaling $550,000 from Key Bank of Maine, and by failing to cease and desist from utilization of those funds upon actual and/or constructive demand by Moore.

Moore argues that he has a direct right of action for conversion against the majority shareholders. As stated in 18 Am.Jur.2d *Conversion* § 7 at 150 (1985), "[i]n appropriate circumstances, intangible personal property can be converted." Moore maintains that when a right (i.e., his guarantee) is merged in a document (i.e., the Key Bank

loan agreements), an action for conversion can be brought, even if the document is not itself converted.

The majority shareholders argue that Moore cannot bring a claim for conversion because he did not have a right to possess the guarantee. *See Leighton,* 634 A.2d at 457. We agree. Moore's claims arising out of the majority shareholders' disposition of the amounts loaned cannot be characterized as a conversion of the guarantee. We therefore affirm the entry of a summary judgment on this claim.

### C. Corporate Waste and Mismanagement

■ In their summary judgment motion, the majority shareholders asserted that Moore lacked standing to maintain claims for corporate waste and mismanagement. Although the Superior Court did not state its reasons for granting the motion on these claims, we believe that this was the basis for the court's decision.

In general, a claim for corporate waste and mismanagement is required to be brought as a derivative action because it is the corporation that has been harmed. *See* 12B *Fletcher Cyclopedia of Corporations* § 5923 at 526–27 (Perm. ed. 1993). "In a close corporation, determining whether an action must be brought as a direct or derivative suit is often difficult." 2 *O'Neal's Close Corporations* § 8.11 at 120. The general rule is that "an action to redress an injury to a corporation must be brought as a derivative suit and may not be maintained by shareholders acting in their individual capacities." *Dowling v. Narragansett Capital Corp.,* 735 F.Supp. 1105, 1113 (D.R.I.1990). "However, if the injury in question is one sustained by the shareholders, directly, they may sue on their own behalf." *Id.* Thus, in order for Moore to prosecute his claim for corporate waste and mismanagement, he must have suffered harm

---

**4.** Viewed in the light most favorable to Moore, the record reveals that the majority shareholders agreed to act as directors, attended regular meetings, and participated in management decisions.

**5.** Because we conclude that the majority shareholders owed Moore a fiduciary duty if they

acted as directors, we need not and do not address his alternate theory that the majority shareholders owed him a fiduciary duty because they acted as his partners in Maine Industrial. *See Slattery v. Bower,* 924 F.2d 6 (1st Cir.1991); *Rosenthal v. Rosenthal,* 543 A.2d 348 (Me.1988).

that is "separate and distinct from that suffered by the other stockholders." *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 221 (Me.1973). *See also* 2 *O'Neal's Close Corporations* § 8.11 at 120–21 (shareholder of close corporation may bring direct action where he suffers harm "separate and distinct from injury to the corporation"); 12B *Fletcher Cyclopedia of Corporations* § 5924 at 532–33 ("The exception to the rule forbidding direct shareholder suits against management is most compelling where the alleged wrong unfairly affected the minority shareholders but did not work an injury either to the corporation or its majority shareholders.").

In the present case, the record contains evidence that Moore suffered an injury separate and distinct from the majority shareholders. First, Moore was terminated as president. Second, the majority shareholders paid dividends only to themselves from the line of credit which Moore and his wife guaranteed. And third, Moore was the only shareholder who was prevented from participating in director meetings. Viewing the evidence in the light most favorable to Moore, we conclude that there was a genuine issue of material fact as to whether he had standing to maintain a claim for corporate waste and mismanagement. The court erred in entering a summary judgment on this claim.

## II. *Dismissal of the Majority Shareholders' Counterclaims*

■ A motion to dismiss tests the legal sufficiency of a party's claims. *Richards v. Soucy*, 610 A.2d 268, 270 (Me.1992). For the purposes of a 12(b)(6) motion, the material allegations must be taken as admitted. *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 98 (Me.1984). In reviewing a dismissal, we examine the claims in the light most favorable to the claimant to determine whether they allege the elements of a cause of action or allege facts that could entitle him to relief under some legal theory. *Id.* at 99. A 12(b)(6) dismissal should only occur "when it appears beyond doubt that a [claimant] is entitled to no relief under any set of facts that he might prove in support of his claim." *Hall v. Board of Envtl. Protection*, 498 A.2d 260, 266 (Me.1985).

The Superior Court dismissed the majority shareholders' counterclaim on the ground that they lacked standing, meaning that they were required to prosecute their claims in a derivative action. *See* M.R.Civ.P. 23A. Moore argues that this dismissal was proper because the majority shareholders failed to show that they suffered a particularized injury with respect to any of their claims. We disagree.

As an initial matter, the majority shareholders were opposing a motion to dismiss. Since they might be able to show that they suffered a particularized injury, it is not "beyond doubt" that they would be entitled to no relief under any of their claims.

Moreover, section 716 clearly provides that both directors *and officers* "shall exercise their powers and discharge their duties in good faith" on behalf of the shareholders. It is undisputed that Moore served as an officer of Maine Industrial. Therefore he owed a fiduciary duty to the majority shareholders. 13–A M.R.S.A. § 716. *See also Atlantic Acoustical v. Moreira*, 348 A.2d 263, 267 (Me.1975) (in general, "a director or officer stands in a fiduciary relationship to his corporation and its shareholders").

The majority shareholders' cancellation of Moore's shares was based on their allegation that Moore did not pay for his stock. Title 13–A M.R.S.A. § 507(3)(B) (1981) provides that unpaid-for shares "may be cancelled, and the holders thereof prevented from exercising the rights of a shareholder, in an action by or in the right of the corporation, its shareholders or its creditors." By virtue of this express statutory language, the majority shareholders had standing to bring an action to cancel Moore's shares. We conclude that the court erred in dismissing their counterclaim.

The entry is:

Judgment affirmed with respect to the conversion claim; in all other respects, judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.