2001 ME 109

**Barbara LAMSON**

v.

**Mark J. COTE et al.**

Supreme Judicial Court of Maine.

Argued: May 16, 2001.
Decided: July 18, 2001.

2. The notice of appeal was filed on the twenty-ninth day following entry of dismissal.

William H. Dale, Jensen Baird Gardner & Henry, Portland, ME, for plaintiff.

Robert S. Hark, Troubh, Heisler & Piampiano, P.A., Portland, ME, James F. Martemucci, Douglas Denham Buccina & Ernst, Portland, ME, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Mark and Marie Cote appeal from the judgment entered in the Superior Court (Oxford County, *Fritzsche, J.*) declaring that Barbara Lamson owns to the center line of the "road" adjacent to her property and that the Cotes have no right to use the road. We vacate the judgment in part and affirm in part.

## I. BACKGROUND

[¶ 2] The matter before us relates to a dispute over access to Howard Pond in Hanover. Barbara Lamson owns waterfront property that abuts a strip of land leading from a perimeter road to the pond. She sought a declaratory judgment that she had become the owner of part of that strip by operation of the "paper street" statute. *See* 33 M.R.S.A. § 469–A (1999); *see also* 23 M.R.S.A. § 3032 (Supp.2000). The defendants, Mark and Marie Cote, own a nonwaterfront lot on the upland side of the perimeter road. The Cotes have used the strip of land beside Lamson's property to obtain access to the pond. The land in dispute is identified as a road on a subdivision plan filed in the Oxford County Registry of Deeds in 1901. The road has never been accepted by the town and has not been improved. It comprises a damp and sloping path approximately thirty-five feet wide and 115 feet long, running from the perimeter road to the water.

[¶ 3] At the turn of the twentieth century, George Virgin owned most of the land on the south side of Howard Pond. In 1899, Virgin conveyed what is now the Lamson lot to W.C. Thomas and Clarence Harlow.[1] Two years later, Virgin record-

---

1. The 1899 conveyed the following land:
   [A] certain lot or parcel of land situated in said Hanover on the south side of Howard's Pond "so called" bounded and described as follows: ... Beginning at a Hemlock tree spotted standing on the south shore of said Pond marked T & H; thence south 43˝west four rods (4) to a stake and stones; thence north 31˝west twelve rods (12) to a stake and stones; thence north 43˝east to the shore of said Pond: thence down on the shore of said Pond to the bound began at, also a good right to the use of the water from said Pond for culinary purposes and also the right to occupy the beach between said shore line to the waters edge at all times. Also, a right to take water from my spring near the above said Hemlock tree for their use at their camp.

ed the subdivision plan for the land surrounding the Lamson lot.[2] Upon creation of the subdivision, the Lamson lot, which had been surrounded on its three nonwater sides by Virgin's property, was surrounded by three roads: a perimeter road that ran from east to west parallel to the pond, and two roads located on either side of the Lamson lot, both of which ran from the perimeter road to Howard Pond. The road that is the subject of this dispute is one of the roads leading to the pond. That road abuts Lamson's property on one side and abuts a lot identified on the plan as lot 32 on the other side. There is a dock extending into the pond from the beach at the end of the road.

[¶ 4] In 1919, Virgin conveyed lot 32 and a contiguous upland parcel to W.C. Thomas. In that deed, Virgin explicitly reserved "from this conveyance the Roads as laid out across said lots and shown on said plan." The deed also provided that Thomas would "have all the wood and timber standing in said roads." The current owner of lot 32 is not a party to this action. There is no evidence that Virgin ever conveyed title to the disputed way to Lamson's predecessors, or to the owners of lot 32.

[¶ 5] In 1920, Virgin conveyed what is now the Cotes' land to Siegfried Paul Clemens Schulz.[3] In the 1920 deed to Schulz, Virgin reserved "the road as laid out along the head of said lots as shown on plan ... recorded in Oxford Registry." The deed further provided that "grantee is to have all the wood and timber growing in the above described roads." The Cotes' land, conveyed after the creation of the subdivision, appears on the subdivision plan as part of a large undifferentiated tract labeled "George A. Virgin Land" and is neither a numbered lot nor adjacent to the disputed way.

[¶ 6] After the Cotes purchased their lot in 1997, they continued to use the disputed way as had the former owners of the lot. The Cotes also replaced the dock that had been used by the former owners of the lot. When Mark Cote cleared some brush on the disputed road, he also apparently cleared brush from Lamson's land. In addition, he cut a birch tree from Lamson's property that had been damaged from the ice storm and was hanging over the disputed way and laid it across the way.

[¶ 7] Lamson objected to the Cotes' use of the road. After sending a letter demanding that the Cotes discontinue using the disputed way and the dock, Lamson filed a five-count complaint in the Superior Court. In her complaint she sought a declaratory judgment that title to the center line of the disputed way is vested in her pursuant to 33 M.R.S.A. § 469–A (count I) and 23 M.R.S.A. § 3032 (count II). Count II also requested an injunction ordering the Cotes to remove their dock. Lamson also claimed trespass damages under 14 M.R.S.A. § 7552 (1980 & Supp. 2000) (count III), and 14 M.R.S.A. § 7551–B (Supp.2000) (count IV) as well as common law trespass damages (count V).

[¶ 8] The Cotes filed a counterclaim seeking a declaratory judgment that they had the right to use the disputed way because they had acquired a prescriptive easement. The parties submitted a partial stipulation of facts to the Superior Court prior to trial.

---

**2.** On the plan, the Lamson land, although previously conveyed, is identified as lot 31.

**3.** The parcel begins at the southwestern corner of lot 32 and runs south about 1300 feet, then west approximately 414 feet to the corner of " 'a White Birch Tree Spotted 1861,' " then north approximately 1300 feet to the southwest corner of lot 35, and ultimately east 281 feet to the origin.

[¶ 9] After a bench trial, the Superior Court concluded that title to the center line of the disputed way passed to each of the two abutting property owners (the Lamson lot and lot 32) pursuant to 33 M.R.S.A. § 469–A, notwithstanding the absence from the litigation of the lot 32 owners and Virgin's successors. The court also found that the disputed way was subject to the deemed vacation provisions of 23 M.R.S.A. § 3032 and that the Cotes, as members of the general public, had no right to use the road. The court ordered the Cotes to remove their dock from the disputed area. The court awarded nominal damages ($1.00) to Lamson on her common law trespass claim (count V), entered judgment for the Cotes on counts III and IV of the complaint and dismissed the Cotes' counterclaim for prescriptive easement as moot. The Cotes filed a motion to alter and amend the judgment and findings pursuant to M.R.Civ.P. 52 and M.R.Civ.P. 59. The court denied the motion without comment. This appeal followed.

## II. DISCUSSION

[¶ 10] The Cotes challenge the court's declaration that Lamson owns to the center line of the road and the court's determination that the Cotes' prescriptive easement claim was moot. The Superior Court's findings of fact will not be set aside unless they are clearly erroneous. M.R.Civ.P. 52; *Dowley v. Morency,* 1999 ME. 137, ¶ 13, 737 A.2d 1061, 1066–67. We review the court's application of law for clear error. *Johnson v. Smith,* 1999 ME 168, ¶ 5, 740 A.2d 579, 581.

### A. Standing

[¶ 11] The Cotes first contend that Lamson has no standing to bring this action. "[S]tanding is a threshold issue bearing on the court's power to adjudicate disputes." *Franklin Prop. Trust v. Foresite, Inc.,* 438 A.2d 218, 220 (Me.1981) (ci-

tations omitted). In order for Lamson to have standing, she must assert that she has some right, title, or interest in the disputed way. *See id.* at 220–21. Her property abuts land that is arguably a proposed unaccepted way. She alleges that she has an interest based on 33 M.R.S.A. § 469–A and 23 M.R.S.A. § 3032.

[¶ 12] The Cotes argue that, because Lamson cannot prevail in demonstrating her interest in the disputed way, she has no standing to adjudicate her interest. This argument puts the cart before the horse. An abutter of property that is in dispute, who presents a good faith claim of title or of a statutorily or equitably created interest in the disputed property, has standing to litigate the existence of that interest. The Superior Court did not err in allowing Lamson to seek a declaratory judgment that she has title to the center line of the disputed way.

### B. Application of 33 M.R.S.A § 469–A

[¶ 13] Because the parties did not join either the owner of lot 32 or Virgin's successors, the record regarding the current ownership of the road is sparse. As between the parties before us, however, there is no factual dispute regarding record title. Virgin never conveyed title to the road to either Lamson's or the Cotes' predecessors in title, and both parties concede that they do not own record title to the disputed way.

[¶ 14] Lamson asserts that she has obtained title, not through conveyance, but through the operation of 33 M.R.S.A. § 469–A. Section 469–A was created to resolve ownership disputes regarding roads and streets laid out on subdivision plans where the original owner did not reserve title in the roads and where the roads have never been accepted by a town. In order to avoid orphaning those "paper streets," section 469–A(1) provides:

Any conveyance made before the effective date of this section *which conveyed land abutting upon a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds* shall be deemed to have conveyed all of the grantor's interest in the portion of the way which abuts the land conveyed, unless the grantor expressly reserved his title to the way by a specific reference to this reservation in the conveyance of the land.

33 M.R.S.A. § 469–A(1) (emphasis added). This section requires the claimant to prove not only the existence of a conveyance made before the effective date of the section, that is, September 29, 1987, which conveyed land abutting a proposed, unaccepted way, but also that the proposed way was laid out on a subdivision plan recorded in the registry of deeds and that the grantor did not reserve title in that proposed way. *See id.*

[¶ 15] In 1899, when the Lamson lot was carved out of Virgin's property, no subdivision plan had been recorded in the registry of deeds. Lamson's lot is therefore not addressed by section 469–A because it does not result from a conveyance "made before the effective date of this section which conveyed *land abutting upon a proposed, unaccepted way* laid out on a subdivision plan recorded in the registry of deeds." *Id.* (emphasis added).[4]

[¶ 16] Moreover, because there was no recorded subdivision plan in 1899, there would have been no occasion for Virgin to reserve any rights in the disputed way in the 1899 deed. In other words, Virgin did not have the opportunity to reserve the disputed way in 1899 because there was no disputed way to reserve.[5] Therefore, although Lamson has demonstrated the first fact necessary to the applicability of section 469–A, that is, that the 1899 deed was a conveyance made before the effective date of section 469–A, Lamson has failed to demonstrate that the deed conveyed land abutting a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds. Thus, section 469–A is not applicable to the Lamson land because the 1899 conveyance predated the recording of the 1901 subdivision plan.

[¶ 17] Nevertheless, the Superior Court concluded that section 469–A(6)[6] could be applied, and that it vested title to the center line of the disputed way in the owners of lots 31 and 32.[7] Specifically, the court applied section 469–A "to effectuate the policy of eliminating the possibility of

---

4. Although Lamson raised a question regarding the actual date of delivery of the original deed, pointing to the date of recording and references to the lot on the later created plan, the court found that "no evidence remains after a hundred years as to when the deed was delivered." Because the date of the deed is prima facie evidence of when the deed was delivered, *Gatchell v. Gatchell*, 127 Me. 328, 143 A. 169, 170 (1928), in the absence of credited evidence to the contrary, the deed is deemed delivered in 1899.

5. Lamson also interprets subsection 469–A(6) to mean that *any person* owning land that abuts an unaccepted way is deemed to own to the center line of the way, 33 M.R.S.A. § 469–A(6) (1999). However, subsection 6 simply provides a guideline to determine the geo-

graphic extent of the title that vests pursuant to subsection 1 or 2.

6. Section 469–A(6) provides that "[a]ny person owning land in this State abutting a proposed, unaccepted way or portion of a proposed, unaccepted way, whose predecessors in title had not reserved title in the way under subsection 1 or 2, is deemed to own to the center line of the way or portion of the way." 33 M.R.S.A. § 469–A(6).

7. In contrast to Lamson, the predecessor of lot 32 received his lot after the filing of the subdivision plan and was deeded all rights in the wood on the roads, thus arguably making Lamson's interest in the road subject to an easement held by the lot 32 owners.

ancient claims" and declared that "title is in [Lamson]." [8]

[¶ 18] We recognize that our holding leaves the question of ownership in the road unresolved and that the Superior Court's judgment suggests that the application of section 469–A is necessary, notwithstanding the factual hurdles, in order to effectuate the Legislature's evident policy of eliminating stale or abandoned claims. Even if we were inclined to apply section 469–A to "clean up" the ancient claims here, however, we would not do so on this record. We have previously refused to resolve ownership rights in a paper street when the grantor's successors in title, who may have retained title in the road, were not parties to the action. *See Glidden v. Belden,* 684 A.2d 1306, 1315–16 & n. 16 (Me.1996).

[¶ 19] Similarly, we could not apply the policy behind section 469–A here because Lamson did not join Virgin's successors or the owner of lot 32 in this action.[9] In enacting section 469–A, the Legislature took care to allow a seller to retain title, even in roads, by explicitly reserving the interest in the applicable deeds. Although we need not opine as to the effectiveness of Virgin's reservations, the language in his deeds to the Cote land and lot 32 raise a colorable claim of reservation, thereby preventing adjudication of title to the disputed road in the absence of Virgin's successors in title.[10]

 [¶ 20] Finally, the Cotes contend that the court erred in finding that their prescriptive easement claim was moot. Because we have concluded that Lamson has failed to establish an interest in the disputed way, the Cotes' claim has now lost its vitality. Lamson has no right to oust the Cotes in the absence of an interest in the land. The Cotes' prescriptive easement claim is not ripe for adjudication until an owner of the land in dispute is declared.

The entry is:

Judgment in favor of Lamson on counts I and II of the complaint vacated. In all other respects, the judgment is affirmed.[11]

---

8. The Superior Court also found that neither Virgin nor his heirs ever reserved title to the disputed way. This finding is clearly erroneous. The record reveals that in 1919, which, on this record, was the first opportunity that Virgin had to convey land (lot 32) abutting the unaccepted way laid out on the 1901 subdivision plan, Virgin specifically reserved "from this conveyance the Roads as laid out across said lots and shown on said plan" for himself.

9. From the record before us, it is possible that Virgin's successors in interest own the property upland of the road in dispute and hold the title to that road in fee.

10. For similar reasons, Lamson cannot oust the Cotes from the road based on an application of 23 M.R.S.A. §§ 3031 and 3032 (1992 & Supp.2000). These provisions deal with circumstances where a developer has proposed the creation of a public road through the filing of a subdivision plan and the municipality does not accept the road. In some circumstances the proposed road is deemed to have been vacated. *See* 23 M.R.S.A. § 3032 (Supp.2000). If the road is vacated, "any incipient [public] rights in the way terminate." *Glidden v. Belden,* 684 A.2d 1306, 1315 (Me.1996). Here, even if the Cotes have not acquired public rights in the way, Lamson does not have the right to oust them absent an ownership interest in the road. It is not clear on this record that Lamson could ever establish a statutory right of ownership in the way.

11. The court also entered judgment in favor of Lamson on her common law trespass claim. That judgment is unaffected by our opinion because it related, at least in part, to the Cotes trespass on land owned by Lamson.