STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-21-97

PAUL KAPOTHANASIS; PROMPTO,
INC.; EIC, INC.; K BROS, INC. and TK
PROPERTIES, INC.,

          Plaintiffs                      ORDER ON OUTSTANDING
                                                  MOTIONS
   v.

CHRISTO KAPOTHANASIS,

          Defendant

The matter before the court is defendant Christo Kapothanasis's ("defendant") motion to

dismiss plaintiffs Paul Kapothanasis, Prompto, Inc., K Bros, Inc., EIC, Inc. and TK Properties,

Inc.'s ("plaintiffs") complaint pursuant to M.R. Civ. P. 12(b)(3) and 12(b)(6). In the alternative,

defendant requests the court stay any claims it does not dismiss. Also pending before the court is

defendant's motion to seal Exhibit 6 to the complaint. Finally, plaintiffs have filed an amended

complaint alleging substantially the same counts as the original complaint, but which also includes

derivative counts on behalf of plaintiff Paul Kapothanasis in the alternative.

Background

This lawsuit arises out of an ongoing dispute related to four closely held corporations,

Prompto, Inc., K Bros, Inc., EIC, Inc. and TK Properties, Inc., ("Prompto Companies") the

corporate plaintiffs in this lawsuit. The Prompto Companies are Maine business corporations

engaged in the business of providing quick oil changes and related services. (Am. Compl. ¶ 10.)

The Prompto Companies are Kapothanasis family businesses, at all times relevant to this lawsuit

all of their stock has been owned by members of the Kapothanasis family. (*See Id.* ¶¶ 8-33.)

Plaintiff Paul Kapothanasis and defendant Christo Kapothanasis are the only remaining

1

shareholders of the Prompto Companies following the deaths of the other shareholders in December 2018 and January 2019. (*Id.* ¶¶ 19-29.) Plaintiff Paul Kapothanasis is an employee of the Prompto Companies and the sole director and officer of the Prompto Companies. (*Id.* ¶ 30.) Defendant Christo Kapothanasis is also an employee of the Prompto Companies, and served as a director and officer until February 12, 2020. (*Id.* ¶ 31.)

Part of the dispute between plaintiff Paul Kapothanasis and defendant Christo Kapothanasis concerns the validity of certain joint tenancy agreements purportedly entered into by plaintiff Paul Kapothanasis and Tasso Kapothanasis, plaintiff Paul Kapothanasis and defendant Christo Kapothanasis's third brother. Plaintiff Paul Kapothanasis claims that upon the death of Tasso Kapothanasis these joint tenancy agreements entitled him to one more share in each of the Prompto Companies than defendant Christo Kapothanasis. (*Id.* ¶ 28.) Because plaintiff Paul Kapothanasis and defendant Christo Kapothanasis are the sole remaining shareholders, this would entitle plaintiff Paul Kapothanasis to majority ownership and control of all four of the Prompto Companies. (*Id.*) Defendant disputes the validity of the Joint Tenancy agreements and argues that he and plaintiff Paul Kapothanasis actually own equal amounts of stock in the Prompto Companies. (Mot. Dismiss at 4.)

The validity of the Joint Tenancy agreements was already before this court, though it never reached a decision on the merits. *See Kapothanasis v. Kapothanasis*, No. CV-20-426 (Me. Super. Ct. Dec. 15, 2020). In that case, the Superior Court (Cumberland County, *Stewart, J.*) was asked to determine whether claims raised by plaintiff Paul Kapothanasis in an arbitration proceeding were covered by an arbitration clause in the Prompto Companies' shareholder agreements. *See Id.* The court found that some of the claims related to the validity of the joint tenancy agreements and were arbitrable under the shareholder agreements, but also found that several of plaintiff Paul

2

Kapothanasis's claims alleged misconduct by defendant Christo Kapothanasis that was not arbitrable under the shareholder agreements. *Id.* at 10. Plaintiffs then filed the instant lawsuit.

Plaintiffs allege that defendant attempted to sell the Prompto Companies and their assets without proper authorization from the shareholders. (Am. Compl. ¶ 34.) Plaintiffs allege that defendant stole company inventory multiple times in 2019. (*Id.* ¶¶ 79-91.) Plaintiffs allege that several Prompto Companies employees complained about defendant's workplace behavior, including bullying and use of racial slurs. (*Id.* ¶¶ 92-93.) After a preliminary review of the evidence of this behavior, the Prompto Companies initiated a formal investigation into defendant's conduct. (*Id.* ¶¶ 94-101.) The parties agreed that Tawney Alvarez, Esq., of Verrill Law Firm, would serve as the investigator. (*Id.* ¶ 102.) Plaintiffs allege that defendant attempted to improperly influence the scope and parameters of the investigation while it was ongoing. (*Id.* ¶ 105.) Plaintiffs also allege that while the investigation was ongoing, defendant engaged in unsafe workplace conduct, leading on at least one occasion to an OSHA citation. (*Id.* ¶¶ 112-115.)

Attorney Alvarez issued a 21-page final investigative report dated July 16, 2020, which is attached to the complaint as Exhibit 6.[1] (*Id.* ¶ 106.) The report found, among other things, that defendant was verbally abusive towards Prompto Companies employees, that defendant misappropriated items from K Bros, Inc. and Prompto, Inc. and that defendant used his company credit card to personally send items to his son, who runs unaffiliated businesses in other states that also provide quick oil change services. (*Id.* ¶ 86, 107.) Defendant was placed on administrative leave after the investigative report was received by the Prompto Companies. (*Id.* ¶ 109.) Plaintiffs further allege that defendant continued to use his company credit card while on administrative

---

[1] Defendant has moved to seal this exhibit. Because this motion will be denied, the court will include the report's relevant contents in its summary of the facts.

leave for personal expenses, even though he was no longer authorized to incur expenses on his company credit card. (*Id.* ¶¶ 108, 110.)

Plaintiff Paul Kapothanasis also alleges separate causes of action from the Prompto Companies based on certain agreements between plaintiff Paul Kapothanasis and defendant for the reimbursement of life insurance premiums. (*Id.* ¶¶ 116-158.) Three trusts were established by separate trust implements on November 23, 1994, to maintain life insurance policies for plaintiff Paul Kapothanasis, defendant and their third brother, Tasso Kapothanasis. (*Id.* ¶ 116.) The cost of the premiums for the life insurance policies varied based on differences in physical health, actuarial life expectancies and insurability of each of the brothers. (*Id.* ¶ 118.) Plaintiff Paul Kapothanasis alleges that the brothers agreed that they would each be responsible only for the costs associated with the policy insuring their own life. (*Id.* ¶ 119.) To effectuate this agreement, plaintiff Paul Kapothanasis alleges he and defendant had an agreement whereby defendant would reimburse him for the difference between the amount plaintiff Paul Kapothanasis contributed to the premium cost of the policy insuring defendant and the amount defendant contributed to the premium cost of policy insuring plaintiff Paul Kapothanasis, and vice versa. (*Id.* ¶ 120.) All three brothers had similar agreements with one another. (*Id.* ¶¶ 121-122.)

Plaintiff Paul Kapothanasis alleges that for the years of 2016, 2017 and 2018, the brothers agreed that payment and reimbursement amounts would be recorded and trued-up in the future. (*Id.* ¶ 124.) Plaintiff Paul Kapothanasis alleges that he contributed $65,241 to the premium cost covering defendant's life during this period. Plaintiff Paul Kapothanasis alleges defendant contributed $28,462.50 to the premium covering plaintiff Paul Kapothanasis's life during this period. Plaintiff Paul Kapothanasis further alleges that after Tasso Kapothanasis's death in 2019, he and defendant continued to make contributions to the premium costs of each other's policies as

4

they had before. (*Id.* ¶ 133.) Over the course of 2019 and 2020, plaintiff Paul Kapothanasis alleges that he contributed $86,988 to the premium cost of the policy covering defendant's life. (*Id.* ¶ 137.) Plaintiff Paul Kapothanasis alleges defendant contributed $37,950 to the premium cost of the policy covering plaintiff's life during the same period. (*Id.* ¶ 138.) Plaintiff Paul Kapothanasis alleges that defendant only paid him $36,778.50, which covers the difference in premium costs for the years 2016, 2017 and 2018, but not the years 2019 and 2020. (*Id.* ¶¶ 140-141.) Therefore, plaintiff Paul Kapothanasis alleges that defendant still owes him $49,038 for the difference in premium costs for 2019 and 2020. (*Id.* ¶ 143.)

Plaintiffs filed their initial complaint on March 15, 2021. This complaint alleged 11 counts:

Count I: Breach of Statutory Duties on behalf of the Prompto Companies and Paul Kapothanasis;

Count II: Breach of Common Law Fiduciary Duties on behalf of the Prompto Companies and Paul Kapothanasis;

Count III: Breach of Company Governing Documents on behalf of the Prompto Companies and Paul Kapothanasis;

Count IV: Conversion (Stolen Property) on behalf of the Prompto Companies and Paul Kapothanasis;

Count V: Unjust Enrichment (Stolen Property) on behalf of the Prompto Companies and Paul Kapothanasis;

Count VI: Fraud on behalf of the Prompto Companies and Paul Kapothanasis;

Count VII: Breach of Contract (Life Insurance Premiums) on behalf of Paul Kapothanasis;

Count VIII: Promissory Estoppel (Life Insurance Premiums) on behalf of Paul Kapothanasis;

Count IX: Unjust Enrichment (Life Insurance Premiums) on behalf of Paul Kapothanasis;

Count X: Punitive Damages on behalf of the Prompto Companies and Paul Kapothanasis;

5

Count XI: Removal of Director by Judicial Proceeding (13-C M.R.S. § 809) on behalf of the Prompto Companies and Paul Kapothanasis

(Compl. ¶¶ 161-220.) On March 23, 2021, Defendant filed a motion to dismiss the complaint as to all counts except Counts VII, VIII and IX, and to stay all counts that are not dismissed. Defendant also filed a motion to seal Exhibit 6 to the complaint on the same day. Plaintiffs filed their opposition to the motion to dismiss on March 23, 2021. Plaintiffs filed their opposition to the motion to seal on April 13, 2021. Defendant replied to the opposition to the motion to seal on April 27, 2021. Defendant replied to the opposition to the motion to dismiss or stay on May 4, 2021. Plaintiffs then filed an amended complaint on May 5, 2021, without moving for leave to amend. This complaint alleges all of the same counts as the original complaint, but with two differences. First, the amended complaint removed plaintiff Paul Kapothanasis as a plaintiff on the first count. Second, the amended complaint reasserts counts I-VI and X-XI as counts XII-XIX, this time plead in the alternative as derivative actions on behalf of plaintiff Paul Kapothanasis as a shareholder in the Prompto Companies. (Am. Compl. ¶¶ 242-310.)

Standard

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." Id. Facts are read in the light most favorable to the plaintiff. *Id.* "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted).

6

## Discussion

The court must address the following issues:

1. Whether Exhibit 6 to the complaint and amended complaint should be sealed;

2. Whether plaintiffs are entitled to amend their complaint without a motion;

3. Whether the claims in the complaint are ripe while arbitration proceedings concerning ownership and control of the Prompto Companies is ongoing;

4. Whether plaintiff Paul Kapothanasis has standing to bring counts I-VI and X-XI as direct claims;

5. If the amended complaint is accepted, whether plaintiff Paul Kapothanasis has standing to bring counts XII-XIX as derivative claims; and

6. Whether any undismissed claims should be stayed pending the result of the plaintiff Paul Kapothanasis and defendant's ongoing arbitration.

As a preliminary matter, defendant moves for dismissal under M.R. Civ. P. 12(b)(3) and 12(b)(6). M.R. Civ. P. 12(b)(3) provides for dismissal when a case is brought in an improper venue. Improper venue at the state level concerns whether a claim was brought in the correct county. *See* 14 M.R.S. § 501 (2020). Defendant's sole argument that venue is improper can be found in a footnote, where he makes the conclusory assertion, without citation, that venue is improper until the arbitration between plaintiff Paul Kapothanasis and defendant is complete. (Mot. Dismiss at 6 n.3.) There is no authority to support a venue challenge on the basis of an ongoing arbitration. Defendant makes no argument that plaintiffs' claims should have been brought in a different county. Therefore, the court will disregard the 12(b)(3) component of the motion and analyze the motion to dismiss on 12(b)(6) grounds.

7

<u>Motion to Seal</u>

Defendant has filed a motion to seal Exhibit 6 to the complaint, which is a copy of the 21-page investigative report written by Attorney Alvarez after concluding his investigation into the allegations of defendant's misconduct in the workplace. Defendant asks the court to seal the exhibit on the grounds that it is a confidential personnel record pursuant to 26 M.R.S. § 631 and that there is no public interest in access to the record. Defendant argues that this statutory confidentiality "outweighs any limited common law presumption of public access." (Mot. Seal at 4.)

The public right to access court documents is not a "limited common law presumption," but a "crucial principle" which must guide the court's review of requests to seal documents. *Carey v. Me. Bd. of Overseers of the Bar*, 2018 ME 73, ¶ 12, 186 A.3d 848. Therefore, the general principle of public access is only overcome when subject to "countervailing interests [that] *heavily* outweigh the public interests in access." *Id.* ¶ 11 (quoting *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988)) (emphasis added). 26 M.R.S. § 631 governs the employee's right to view their personnel file, which includes, but is not limited to, "any formal or informal employee evaluations and reports relating to the employee's character, credit, work habits, compensation and benefits and nonprivileged medical records or nurses' station notes relating to the employee that the employer has in the employer's possession." (2020). The statute also provides that "[t]he employer shall take adequate steps to ensure the integrity and confidentiality of these records." *Id.*

There is no dispute that the investigative report in question is part of defendant's personnel file covered by 26 M.R.S. § 631. However, the provision for confidentiality is concerned with employers, not courts. § 631 is not a categorical requirement that any document

8

from a personnel file be sealed if introduced in a court proceeding. Indeed, the court could find no case where this statute was interpreted in this way. Defendant's interest in the confidentiality of his employment records is certainly a factor for the court to consider, but it must be weighed against the important principle of public access to judicial records. *Carey*, 2018 ME 73, ¶ 12, 186 A.3d 848.

The court chose to seal Exhibit 6 when it was introduced in *Kapothanasis v. Kapothanasis*, No. CV-20-426 (Me. Super. Ct. Dec. 15, 2020), because the decision in that case rested on the arbitrability of the substantive claims, rather than the merits of the substantive claims themselves. *See* Order on Pet'r's Mot. Seal, *Kapothanasis v. Kapothanasis*, No. CV-20-426 (Me. Super. Ct. Dec. 15, 2020). In this case, several counts are based, at least in part, on the findings of the investigation. Therefore, the public has a much greater interest in access to these documents, and defendant's interest in the privacy of his personnel file does not heavily outweigh the public interests in access. The motion to seal will be denied.

Amended Complaint

M.R. Civ. P. 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . ." Defendant has filed a motion to dismiss or stay and a motion to seal in response to plaintiffs' complaint, but has filed no answer. The court must determine whether these motions constitute "responsive pleadings" within the meaning of M.R. Civ. P. 15(a).

The Law Court has not addressed this issue. The Superior Court (Cumberland County, *Horton, J.*) has found that motions do not qualify as "responsive pleadings" within the meaning of M.R. Civ. P. 15(a). *Temm v. LPL Fin. LLC*, No. CV-16-14, 2016 Me. Super. LEXIS 68, at *2-

9

3 (Apr. 29, 2016). The court noted that the rules distinguish between motions and pleadings, and their use within the rules does not have significant overlap. *Id.* For example, M.R. Civ. P. 7(a) provides an exhaustive list of pleadings that shall be allowed without including any motions. M.R. Civ. P. 7(b) discusses the rules for motions. Pleadings and motions are different types of filing.

Defendant has only filed motions, oppositions to motions and replies. Defendant has not filed a responsive pleading within the meaning of M.R. Civ. P. 15(a). Therefore, plaintiffs have the right to amend their complaint once as a matter of course. The amended complaint will be accepted. The amended complaint removes plaintiff Paul Kapothanasis as a plaintiff on count I, which renders defendant's challenge to plaintiff Paul Kapothanasis's standing to bring that count moot. The amended complaint otherwise alleges all 11 counts in the original complaint that were the subject of defendant's motion to dismiss or stay. Therefore, the court will proceed with its analysis of the motion to dismiss with reference to the amended complaint.

Ripeness

"Ripeness is a two prong analysis: 1) the issues must be fit for judicial review, and (2) hardship to the parties will result if the court withholds review." *Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶ 20, 221 A.3d 554. In order to be fit for review, the controversy must pose a "concrete, certain, or immediate legal problem." *Johnson v. Crane*, 2017 ME 113, ¶ 10, 163 A.3d 832 (quotation omitted). The hardship prong "requires adverse effects on the plaintiff, . . . and speculative hardships do not suffice to meet [the] requirement." *Johnson v. City of Augusta*, 2006 ME 92, ¶ 8, 902 A.2d 855.

Defendant argues that this dispute will not be ripe until a determination is made in the related arbitration regarding the validity of the Joint Tenancy Agreements that plaintiff Paul

10

Kapothanasis alleges give him control over the Prompto Companies. On the first prong, defendant argues that if he prevails in arbitration, his equal ownership of the Prompto Companies would allow him to prevent the Prompto Companies from filing suit against him. (Mot. Dismiss at 6-7.) Thus, he argues the current controversy is not a concrete, certain or immediate legal problem.

Defendant misunderstands the first prong of the ripeness analysis. The relevant question is whether the controversy poses a concrete, certain or immediate *legal* problem. The possibility of defendant prevailing in arbitration and using his control of the Prompto Companies to cause them to withdraw from the suit, or the counterfactual scenario in which he could have prevented them from entering the suit in the first place, has no bearing on the legal issues at stake here. With one exception, the complaint alleges concrete injuries allegedly caused by defendant's actions and is therefore fit for judicial review.

The exception to the above is Count XI, Removal of a Director by Judicial Proceeding, and its derivative counterpart, Count XIX. By its own language, the amended complaint seeks an order removing defendant as a director "[s]hould the [a]rbitration [a]ction result in the restoration of [defendant]'s position as a director." (Am. Compl. ¶¶ 236, 307.) This is an inherently speculative claim, based on one possible outcome of a currently ongoing arbitration. Therefore, these counts do not represent a concrete, certain or immediate legal problem, and are unfit for judicial review at this time.

As for the second prong, defendant argues that hardship will not result if the court withholds judicial review because defendant has no active role in the Prompto Companies at this time. (Mot. Dismiss at 7-8.) Therefore, defendant argues, there is no threat of the alleged harms recurring while the parties wait for the arbitration to conclude. (*Id.* at 8.) Delaying judicial

11

review would prevent plaintiffs from pursuing their claims against defendant and prevent them from recovering damages for their alleged injuries. The fact that these injuries are unlikely to get worse in the meantime is not a compelling reason to find that hardship will not result if the court withholds review.

On the other hand, there is no hardship in withholding review for the claims requesting the speculative removal of defendant as a director of the Prompto Companies. Defendant is not currently serving in any capacity at the Prompto Companies, and the harm that would allegedly result from his reinstatement is purely speculative. Counts XI and XIX therefore fail the second prong of the ripeness analysis as well.

To summarize, Counts XI and XIX are not ripe and will therefore be dismissed without prejudice. The rest of the counts in the amended complaint are ripe for judicial review.

Standing on Direct Claims

Defendant challenges plaintiff Paul Kapothanasis's standing to bring Counts I-VI and X-XI as direct claims. Defendant argues that these counts only allege injuries to the Prompto Companies and must be brought as derivative claims. Defendant argues that because shareholders may not bring direct claims alleging harms to a corporation, plaintiff Paul Kapothanasis lacks standing to bring these claims.

"Standing is a threshold issue bearing on the court's power to adjudicate disputes." *Lamson v. Cotes*, 2001 ME 109, ¶ 11, 775 A.2d 1134. "In a close corporation, determining whether an action must be brought as a direct or derivative suit is often difficult." *Moore v. Maine Indus. Servs.*, 645 A.2d 626, 629 (Me. 1994) (citation omitted). The *Moore* court outlined the difference as follows:

> The general rule is that an action to redress an injury to a corporation must be brought as a derivative suit and may not be maintained by shareholders acting in

12

their individual capacities. However, if the injury in question is one sustained by the shareholders, directly, they may sue on their own behalf. Thus, in order for [plaintiff] to prosecute his claim . . . he must have suffered harm that is separate and distinct from that suffered by the other stockholders.

*Id.* 629-30. Counts II-VI allege that defendant breached his duties to the corporation and committed torts against it by, among other things, attempting to sell the companies without permission and misappropriating company property. Count X seeks punitive damages for the same conduct. Count XI is not ripe, so it will not be analyzed here.

Plaintiff Paul Kapothanasis does not dispute that these counts allege harms to the corporation. (*See* Opp. Mot. Dismiss at 15-16.) Plaintiff Paul Kapothanasis argues that as the sole other shareholder, any harms he suffered as a result of defendant's conduct are necessarily separate and distinct from the harms suffered by the other shareholder, i.e., defendant. (*Id.* at 16.) Defendant argues that the appropriate standard is whether plaintiff Paul Kapothanasis suffered harms that were separate and distinct from the harms to the *corporation*. (Mot. Dismiss at 9.)

Defendant's interpretation is more compelling. While it is true that in one sense plaintiff allegedly suffered harms separate and distinct from the only other shareholder, it is clear on a close reading that *Moore* did not intend to open the door for direct suits in a case like this. The line containing the phrase "harm separate and distinct from the other shareholders" begins with the word "thus." *Moore*, 645 A.2d at 629-30. This indicates that the *Moore* court believed this sentence logically follows from the sentences immediately preceding it. Those sentences contrast the general rule that shareholder actions to redress injuries to a corporation must be brought as derivative suits with an exception to that rule where shareholders who suffer a "direct" injury may sue directly. *Id.* If those sentences are to be read consistently with the requirement that a shareholder in a close corporation suffer harm "separate and distinct from that suffered by the

13

other shareholders" to bring a direct suit, this requirement must entail that the harm suffered was "direct" to that shareholder and not "an injury to a corporation." *Id.*

Plaintiffs only allege harms to the Prompto Companies on Counts II-VI and X. While plaintiff Paul Kapothanasis may be affected by these alleged harms differently than defendant, the harms alleged are not direct. Therefore, plaintiff Paul Kapothanasis does not have standing to bring Counts II-VI and X as direct claims.

Standing on Derivative Claims

Counts XII-XIX in the amended complaint, plead in the alternative, are derivative versions of Counts I-VI and X-XI. Count XIX is unripe and has already been addressed earlier in this order. Because the amended complaint was filed after briefing on the motion to dismiss or stay ended, these Counts are not specifically challenged in defendant's motion. However, defendant does argue that plaintiff Paul Kapothanasis lacks standing to bring these claims in a derivative action. (Mot. Dismiss at 10-11.) Because these Counts are easily addressed on the face of the amended complaint, the court will address them here.

"A derivative action permits a shareholder to sue on behalf of the corporation, asserting the corporation's rights, when the corporation itself has refused to act." *Morton v. Burr*, BCD-RE-13-03, at *15 (Bus. & Consumer Ct. May 23, 2014, *Murphy, J.*); *see also Voisine v. Berube*, 2011 ME 137, ¶ 4, 38 A.3d 310. Derivative actions are not appropriate where the corporation has already brought suit on its own behalf. *Morton*, BCD-RE-13-03, at *15.

The Prompto Companies have already brought claims identical to Counts XII-XVIII on their own behalf. Therefore, there is no need for plaintiff Paul Kapothanasis to bring derivative claims alleging the same harms on behalf of the Prompto Companies. Counts XII-XVIII will be dismissed.

14

Stay

Defendant finally requests that all undismissed Counts be stayed pending decision in the related arbitration. "The grant or denial of [a] stay rests in the sound discretion of the trial court." *State v. Brown*, 2014 ME 79, ¶ 32, 95 A.3d 82. A stay will only be granted "when the court is satisfied that justice will thereby be promoted." *Society of Lloyd's v. Baker*, 673 A.2d 1336, 1340 (Me. 1996).

Justice will not be promoted by a stay. Defendant argues that the outcome of this lawsuit is dependent on the result of the ongoing arbitration between him and plaintiff Paul Kapothanasis because he would be able to prevent the Prompto Companies from filing suit against him if he had equal ownership and control. (Mot. Dismiss at 15-16.) Even assuming that defendant is correct that he would succeed in getting the Prompto Companies to withdraw from this lawsuit if he prevails in arbitration, this does not mean that the outcome of this lawsuit is *legally* dependent on the outcome of the arbitration. The issues before the arbitrator relate to ownership and control of the Prompto Companies. The issues before this court relate to defendant's alleged misconduct as an employee and director of the Prompto Companies and alleged life insurance true-up agreements. These two matters are legally distinct and present no risk of duplicative or inconsistent judgments.

Justice will not be promoted by a stay of these proceedings. Therefore, defendant's request for a stay will be denied.

15

The entry is

> Defendant Christo Kapothanasis's Motion to Seal is DENIED.
>
> Defendant Christo Kapothanasis's Motion to Dismiss is GRANTED with prejudice as to Counts XII-XVIII of the Amended Complaint. The motion is GRANTED without prejudice as to Counts XI and XIX of the Amended Complaint.
>
> Defendant Christo Kapothanasis's Motion to Dismiss is GRANTED with prejudice as to plaintiff Paul Kapothanasis on Counts II-VI and X of the Amended Complaint. Plaintiff Paul Kapothanasis shall be removed as a plaintiff as to these Counts.
>
> Defendant Christo Kapothanasis's Motion to Dismiss is DENIED as to the rest of the Amended Complaint.
>
> Defendant Christo Kapothanasis's Motion for a Stay is DENIED.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: June 8 , 2021

Harold Stewart, II
Justice, Superior Court

16