STATE OF MAINE

KENNEBEC, ss.

~~~

CLYDE and ANNE PUSHARD,

     Plaintiffs

    v.

SCOTT DELONG,

     Defendant

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

AUG 6 2003

This matter is before the court on defendant's motion for summary judgment and to dismiss.[1] In their complaint, the plaintiffs claim an easement from their land to a way known as "Chipmunk Lane" permitting access to a public road. They complain that the defendant has interfered with their ability to utilize the easement and they have been damaged as a result. Plaintiffs further seek a declaratory judgment as to their rights to the alleged easement. The defendant denies the existence of an easement for the benefit of plaintiffs, claims title to the land in question by deed, common law and by statute and asserts a counterclaim for declaratory judgment.

Under date of September 30, 1969, one Cyr conveyed a lot of land to one Bulick described as "a certain lot or parcel of land known as lot no. 1 on a plan of lots prepared by J. Hurley for this grantor on August 8, 1967, and to be recorded, situated in Monmouth and more particularly described as follows:". The property is then described by metes and bounds bordered on the south by Sand Pond and on the north by "the southerly side of a fifty (50') foot right-of-way;". In addition, Cyr conveyed "the

---

[1] Because the court is considering all filed documents, including affidavits, it is treating the motion as a motion for summary judgment in all respects.

right to use in common with others of the right-of-way of the grantor for ingress and egress to the aforesaid premises from the Lewiston-Gardiner highway."

Under acknowledged date of December 24, 1974, Cyr conveyed to Bulick a lot of land on the north side of a fifty foot right-of-way commencing at the corner of the lot "herein conveyed which is lot no. two (2) on an unrecorded plan of lots owned by Lawrence J. Cyr, prepared by J. Hurley, CE, August 8, 1967;". Also conveyed was the "right to the use in common with others of the right-of-way of the grantor for ingress and egress to the aforesaid granted premises from the Lewiston-Gardiner highway,". Eventually, the two lots 1 and 2 were conveyed to the defendant by the Gardiner Savings Institution on May 2, 2000. The description makes reference to "a plan of lots prepared by J. Hurley for Lawrence J. Cyr dated August 8, 1967, situated in Monmouth and then describes the lots by metes and bounds. Also included is "the right to the use, in common with others, of the right-of-way now or formerly Lawrrernce J. Cyr for the ingress and egress of the aforesaid granted premises from the Lewiston-Gardiner highway,".

The record indicates that a plan titled "Property Plan Cyr Development Sand Pond, Monmouth, Maine" disclosing "bearings-magnetic, 1967" was recorded in the Kennebec Registry of Deeds on September 7, 1972, having previously been approved by the Monmouth Planning Board. A notation is made on the plan as follows: "This plan based on original survey and plan by J. Hurley. Lines of lots 21, 23 and 25 revised by L. Cyr. Pins reportedly set by J. Hurley. No field inspection made."

Lots no. 1 and 2 are located as the most southerly lots at the boundary of the subdivision. Chipmunk Lane, a 50' right-of-way, exists on the plan between lots no. 1 and 2. It terminates at the southerly boundary of the subdivision plan which is in line with the southerly boundary of lots no. 1 and 2. On May 11, 1990, Cyr conveyed to one

2

Cochran, "a right-of-way 20 feet (20') in width commencing at the southerly terminus of the so-called Chipmunk Lane right-of-way that extends in a general southerly direction from the so-called Scott Road; thence extending in a general southerly direction, across the land now or formerly of the grantor, to the land now or formerly of the grantee. Meaning and intending to convey to the grantee, her heirs and assigns, "a right-of-way to provide year round ingress and egress from and over the so-called Chipmunk Lane and Scott Road to the existing grantee's driveway, including but not limited to motor vehicles." The plaintiffs acquired their land on August 11, 1995. Their deed contains "the right-of-way from the Chipmunk Lane to the driveway to the above-described premises as described . . . "

On October 25, 1978, at a town meeting called for that and other purposes, the town adopted an article to "authorize the selectmen to use town highway equipment and provide other necessary services to maintain year-round vehicular access over the private ways known as the Scott Road and Chipmunk Lane for fire and police protection." This proposal had been submitted by town counsel in accordance with 23 M.R.S.A. § 3105.

In 1990, at the time of Cyr's deed to Cochran, Cyr, as an excavating contractor, constructed a 12-foot driveway from a turnaround at the terminus of Chipmunk Lane to the plaintiffs' property. The plaintiffs' predecessor-in-title had or was in the process of converting a seasonal summer property to a year-round home. At that time, access to the plaintiffs' land was by way of Hillside Lane, apparently a way only acceptable for motor vehicle use on a seasonal basis. The fundamental question, to the extent it can be resolved in the context of summary judgment, is what rights, if any, were held by plaintiffs' predecessor-in-title to land in the plan subdivision contrary to the claims of defendant to having property interests in derogation of plaintiffs' claim?

3

The first question which must be answered by the court is whether or not Cyr expressly reserved sufficient property rights in Chipmunk Lane which allowed him to convey an easement in 1990. Plaintiffs argues that because both the 1969 and 1974 deeds to defendant's predecessors-in-title include the language: "together with a right to use in common with others of the right-of-way of the Grantor for ingress and egress to the aforesaid granted premises from the Lewistion-Gardiner Highway," he has satisfied the common law and statutory requirements by expressly reserving an ownership in the Chipmunk Lane right-of-way. This language does not comport with well-accepted rules of construction in land transfers. Since "certainty in title to real estate depends upon the reading of the expressed intentions of parties to a deed," the "security of real estate title depends upon strict adherence to these rules of construction." *See Sylvan Properties Co., Inc. v. State Planning Office*, 711 A.2d 138. Plaintiffs have provided no evidence that the 1969 and 1974 deeds contain an express reservation and rules of construction require that the "reservation" or "exception" must be expressly stated. In the present case, the parties claim that Cyr retained an "existing right or interest, by and for the grantor, in real property being granted to another." *See* BLACK'S LAW DICTIONARY, 7th ed. Since the language in question purports to convey to others a right to use an easement, simple words by the grantor that he possesses the right to do so do not constitute a reservation or an exception and the language quoted does not satisfy the common law nor statutory requirements in that regard.

The 1969 deed of Cyr to Bulick described the property in metes and bounds as well as identifying the parcel by lot number on a plan "to be recorded." As a matter of intent, clearly Cyr intended to convey a lot on a plan, which plan contained the location and extent of the right-of-way of access to the lot. As a matter of fact, the plan was not recorded and, absent all other circumstances, the conveyance was by metes and bounds.

4

The 1974 deed to Bulick also conveyed a lot of land described by metes and bounds and, in addition, described it as a lot number on an unrecorded plan. As a matter of fact, a plan had been recorded but it was not identified as the 1967 plan described in the two deeds. On the other hand, the plan actually recorded asserts as its basis the measurements and preparation by the same surveyor under the same date. Cyr knew full well that the plan to which he made reference was not recorded but he also had to be fully aware that a plan had been recorded. What was the grantor's intent?

Even though the grantor made reference to a plan which was not recorded, it would appear that the plan actually recorded was identical except for those locations specifically recited as updated on the recorded plan itself. Therefore, whether recited or not, it appears clear that for purposes of the relationship of these properties to third persons, i.e., the world at large, there was a recorded plan precisely consistent with the deed. For the purposes of this proceeding, the court considers the 1974 deed to be a conveyance of land in accordance with a recorded plan.

The conveyance by Cyr to Bulick in September of 1969 transferred title to land abutting upon a private way in which Cyr did not expressly reserve his title to the private way by specific reference thereto and the description did not apply by reference to a recorded plan. Therefore, in accordance with 33 M.R.S.A. § 461, Cyr conveyed all of his interest in that portion of the private way as it relates to lot no. 1.

With respect to the conveyance by Cyr to Bulick in December of 1974, the court deems it to be a conveyance before the effective date of 33 M.R.S.A. § 469-A[2] of land abutting upon a proposed, unaccepted private way laid out in a recorded subdivision plan. Since Cyr did not reserve title by way of specific reference, the conveyance is

[2] September 29, 1987, *Lamson v. Cote*, 775 A.2d 1134.

5

deemed to have conveyed all of his interest unless he preserved his claims by recording a notice in accordance with that statute within two years after its effective date of 1987.

Plaintiffs argue that this was an accepted way. It certainly is not a public way. *See Town of Kittery v. McKenzie*, 785 A.2d 1251; *see also Comber v. Inhabitants of the Plantation of Dennistown*, 398 A.2d 376. There is a dispute of fact as to whether it was a "paper street" from a line drawn between the northerly boundaries of lots no. 1 and 2 to a line drawn between the southerly boundaries of lots no. 1 and 2. Defendant claims that the way ended in a cul-de-sac on the northerly boundary of his property while plaintiffs claim vehicular access through the area, apparently sometimes called Chipmunk Lane Extension, prior to his building the 12-foot driveway and attempting to grant a 20-foot right-of-way. The vote of the town in 1978 simply recognized the private way of Chipmunk Lane and was not a formal acceptance of that way in any other sense. In any event, whether some access was accomplished over the so-called Chipmunk Lane Extension prior to 1990, there is no evidence that the private way as developed and used extended to the southerly boundary. Therefore, the failure of Cyr to reserve his rights and his failure to provide notification within the statutory period clearly deprives him of title to the 50-foot land in question as a matter of statutory law and common law to the extent it provides a right in abutting landowners to title to the mid-line of private ways. This common law rule is provided in 33 M.R.S.A. § 465.[3]

Plaintiffs claim a prescriptive easement described by Black's Law Dictionary as "an easement created from an open, adverse, and continuous use over statutory period." BLACK'S LAW DICTIONARY, 7th ed. Maine law states that, "A prescriptive easement is created only by a continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open,

---

[3] This conclusion is reinforced by 23 M.R.S.A. §§ 3031 and 3032.

6

notorious, visible and uninterrupted that knowledge and acquiescence will be presumed." *Comber v. Inhabitants of the Plantation of Dennistown*, 398 A.2d 376 (citing *Dartnell v. Bidwell*, 115 Me. 227, 98 A. 743 (1916). Plaintiffs provide an affidavit of Jeffrey Pushard, son of Clyde Pushard, a plaintiff, who states in that in 1979 he moved into the defendant's property, remaining there until 1982. He asserts that from the late 1970's continuously through October of 2001, the plaintiffs and their predecessors-in-title traveled Chipmunk Lane on foot and by vehicle to get to and from their property crossing over the Delong property in the process. He further asserts that when he owned and occupied defendant's property, he did nothing to stop the access. Plaintiffs also present the affidavit of Marcel Labbe who indicates he owned property of the plaintiffs from May 1984 until November 1988 when he conveyed same to his spouse who continued to live there until 1990. He asserts that he participated with Mr. Cyr in extending Chipmunk Lane to plaintiffs' property and to create a turnaround for town vehicles and from the time he bought the property until conveyed to his spouse, he traveled on Chipmunk Lane both on foot and by motor vehicle to gain access. He indicates there was no objection by the owners of the defendant's property. Plaintiffs also present the affidavit of Jeffrey P. Parker who owns property in the area and alleges a specific recollection that an individual who owned the plaintiffs' property between the late 1970's and early 1980's gained access to it via Chipmunk Lane both by foot and by motor vehicle. Finally, plaintiffs present the affidavit of Fay Masterson who asserts that from the time she acquired her property at 95 Chipmunk Lane in the late 1970's until at least 1980 she observed previous owners cross Chipmunk Lane by foot and vehicle to get to plaintiffs' land.

In response, the defendant has presented an affidavit of Scott R. Delong who asserts that the Cyrs did not construct the southerly terminus of Chipmunk Lane

7

located between lots no. 1 and 2 when they subdivided their property in the 1960's and 1970's. He asserts that in 1984, a thick stand of mature trees between the end of Chipmunk Lane and the plaintiffs' property had previously made the area impassable by motor vehicles and it was removed in 1984 at the time a 12-foot wide gravel driveway was constructed and 20-foot wide extension of Chipmunk Lane was constructed from the terminus of Chipmunk Lane located at the northerly boundary of the defendant's property. Prior to 1984, Chipmunk Lane terminated in a turnaround consisting of a bow located north of defendant's property line. Defendant also presents the affidavit of Laureat G. Groleau who testified that from the mid-1970's to 1999, he lived on the Scott Road as his primary residence bordering Chipmunk Lane. He also asserts that from 1976 to 1977 he owned the premises located at the end of Chipmunk Lane now part of the premises owned by the plaintiffs. He states that prior to 1984, the only motor vehicle access for ingress or egress to any of what is now the Pushard property was over a private driveway directly from Hillside Lane and that a thick stand of mature trees stood between the end of Chipmunk Lane and the private parking area on the property now owned by the plaintiffs until 1984. Whether the plaintiffs may claim a prescriptive easement by virtue of knowledge and acquiescence by the defendant titleholders or by open, notorious, visible and uninterrupted use, there are sufficient genuine issues of material facts to prohibit the entry of summary judgment for or against a prescriptive easement.

Plaintiffs also claim an easement by necessity. This is defined as an easement created by operation of law because the easement is indispensable to the reasonable use of nearby property, such as an easement connecting a parcel of land to a road. BLACK'S LAW DICTIONARY, 7th ed. Prior to the construction of the driveway and 20-foot right-of-way by Cyr, it appears undisputed that access to the plaintiffs' property was by Hillside

8

Lane. It also appears undisputed that the access is somewhat seasonal because of the nature of the terrain and the road itself. There apparently is no disagreement that prior to the construction of the driveway, the property was used for seasonal purposes as it contained a summer cottage. Therefore, the question becomes whether or not a property owner may convert their land from seasonal, fair weather use to year-round use and thereby create an easement by necessity dominant to the property rights of an adjoining landowner. An easement by necessity is an equitable principle. This court does not believe that one can create an equity at the expense of another and expect relief from the court since the equities must be balanced between the property owners. This court is satisfied that the plaintiffs are not entitled to an easement by necessity as a matter of equitable principle.

By the same token, plaintiffs cannot claim the application of 33 M.R.S.A. § 460 on the basis of an exception where access to Chipmunk Lane is "necessary to provide ingress and egress to property adjoining" the private way. As previously stated, plaintiffs, or their predecessors-in-title, voluntarily created a necessity at the expense of the defendant. Such is not in accordance with the intent and purpose of section 460.

Plaintiffs argue that there is a public easement established over Chipmunk Lane because of the vote of the town of Monmouth. The article upon which the town voted is specific and makes it clear that the authorization is simply to allow maintenance of a private way to protect the property owners by means of police and fire protection. Nothing in this town action would create a public easement.

Plaintiffs argue that they have obtained an irrevocable license for access across Chipmunk Lane. They assert that predecessors-in-title to the plaintiffs' received from Cyr a promise for extension and the right to use Chipmunk Lane. Plaintiffs agree that licenses are ordinarily revocable at will. They also cite the equitable doctrine of

9

irrevocable license based upon the equitable principle of estoppel. An easement by estoppel is a court-ordered easement created from a voluntary servitude after a person, mistakenly believing the servitude to be permanent, acted in reasonable reliance on the mistaken belief. BLACK'S LAW DICTIONARY, 7th ed. Plaintiffs overlook the principle that licenses are not only revocable at will, they run to the individual and not to or with the land. Therefore, any license given by Cyr to the Labbes was personal to the Labbes only and enforceable by the Labbes only and plaintiffs take nothing from it.

In conclusion, the court is satisfied that there is no express easement to land of the plaintiffs over land of the defendant, there is no easement by necessity and there is no license. There is a genuine issue of material fact as to whether there is a prescriptive easement.

The entry will be:

Defendant's motion for summary judgment is DENIED.

Dated: May___30___, 2003

Donald H. Marden
Justice, Superior Court

10

CLYDE S PUSHARD   - PLAINTIFF
210 SHERMAN STREET
CANTON MA
Attorney for: CLYDE S PUSHARD
ELLIOTT EPSTEIN
ISAACSON & RAYMOND
PO BOX 891
75 PARK STREET
LEWISTON ME 04243-0891


ANNE L PUSHARD   - PLAINTIFF
210 SHERMAN STREET
CANTON MA
Attorney for: ANNE L PUSHARD
ELLIOTT EPSTEIN
ISAACSON & RAYMOND
PO BOX 891
75 PARK STREET
LEWISTON ME 04243-0891



vs
SCOTT DELONG   - DEFENDANT
72 WATER STREET
BRUNSWICK ME 04011
Attorney for: SCOTT DELONG
DAVID LOURIE

189 SPURWINK AVENUE

CAPE ELIZABETH ME 04107

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-RE-2001-00044


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: EASEMENTS
Filing Date: 12/31/2001

## Docket Events:

02/06/2002 FILING DOCUMENT - COMPLAINT FILED ON 12/31/2001

02/06/2002 Party(s):  CLYDE S PUSHARD
           ATTORNEY - RETAINED ENTERED ON 12/31/2001
           Plaintiff's Attorney: ELLIOTT EPSTEIN

02/06/2002 Party(s):  ANNE L PUSHARD
           ATTORNEY - RETAINED ENTERED ON 12/31/2001
           Plaintiff's Attorney: ELLIOTT EPSTEIN

02/06/2002 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 12/31/2001
           MAILED TO ATTY.

02/06/2002 Party(s):  SCOTT DELONG
           SUMMONS - CIVIL SUMMONS FILED ON 12/31/2001

02/06/2002 CERTIFY/NOTIFICATION - LIS PENDENS CERTIFICATE ISSUED ON 12/31/2001
           SIGNED BY NANCY A DESJARDIN. ATTESTED COPY MAILED TO ATTY.